DAVID E. COLLINS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

JURORS—QUALIFICATION OF—NON-PAYMENT OF POLL TAX—WHEN DISQUALIFIES—PRISONER'S RIGHT TO LIST OF JURORS SUMMONED.

1. The general rule is that if a juror is qualified at the time he performs service as such, he is competent, whether he was qualified at the time he was drawn and summoned or not.

2. The list of jurors to be furnished to the defendant in a criminal case on his request therefor, as contemplated by Section 5901, Revised Statutes, is a list of those that have been *summoned* to attend, and not merely a list of those that have been drawn.

3. The return of the sheriff upon a venire is the only authentic evidence as to which of the jurors have been summoned.

4. It is error for the court in a criminal case, against the defendants' objection, to proceed with the empanelling of the trial jury from among persons who have been drawn and summoned on a special venire for the trial of such cause, until after the sheriff has made his return of such venire showing who have been summoned thereon. Such procedure deprives the defendant of his right to demand a list of the jurors summoned; and of his right to an intelligent exercise of the right of peremptory challenge.

David E. Collins v. The State of Florida.—Opinion of Court.

5. Where a second special venire is drawn in a criminal case because of the exhaustion of a previous special venire, and such second venire is resorted to for a completion of the panel, it is error to put such second venire down and to resort again to the first special venire and to put therefrom upon the defendant a juror who had made his appearance in court after the second venire had been resorted to. When successive special venires become necessary to complete the panel, each venire in turn must be exhausted in fact before recourse can be had to the jurors summoned on another.

6. The disqualification of persons for jury service by reason of the non-payment of their "last assessed capitation tax," as contemplated in Section 1, Chapter 4015, laws of 1891, does not arise, or attach itself to such persons until after the time has elapsed in which they are allowed by the revenue laws voluntarily to pay such tax without coercion. Until they become poll tax delinquents by failing or refusing to pay such tax within the time that it can be voluntarily paid without coercion, they are competent jurors.

Writ of error to the Circuit Court for Suwannee county.

The facts in the case are stated in the opinion of the court.

*Joe S. White, B. B. Blackwell and F. L. Rees* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

TAYLOR, J.:

The plaintiff in error was indicted at the Fall term, 1892, of the Circuit Court for Suwannee county, for the killing of Wiley W. Williams, the indictment charging him with murder in the first degree. He

was tried at the same term of the court, the trial resulting in a verdict of guilty of manslaughter in the first degree. The sentence pronounced was confinement in the State penitentiary for seven years. From this judgment a writ of error is taken here.

The plaintiff in error interposed a plea in abatement to the indictment, the substance of which was, that eleven of the persons who composed the grand jury that found and presented such indictment were not legal and qualified grand jurors at the time they were drawn and summoned to serve as such, because at the time of being drawn and summoned they had not paid their last assessed poll tax, and because the Judge of the Circuit Court, before empanelling said eleven persons on such grand jury, required them to go out and pay their said last assessed poll tax; after such payment they were empanelled upon such grand jury. To this plea in abatement the State by its attorney demurred, and the demurrer was sustained by the court. This ruling is assigned and urged as error.

The contention of counsel for the plaintiff in error is, that it was too late for the grand jurors to qualify themselves in the particular of paying their poll tax *after* they were drawn and summoned to serve; that the legal prerequisites constituting qualification for jury service should all have been complied with at the time of, or prior to the fact of being "*drawn* and *summoned*." There is no merit in this assignment, nor in the reasons urged in its support. So far as the

individual is concerned who may be indicted for the commission of crime by a grand jury, he is interested only in the fact as to-whether the grand jury that indicts him is possessed of all the legal qualifications *at the time of the performance by them of the official act that affects him*. The body of men who are *drawn* and *summoned* to court to act as grand jurors can not be said to be a grand jury until they are duly empanelled and sworn as such ; and, until they are so empanelled and sworn, they are powerless to find bills or to do any other authoritative act as a grand jury that could legally affect any one. Though never so regularly *drawn* and *summoned*, still they may never become clothed, by being empanelled and sworn as a grand jury, with legal authority to affect any one by an indictment. How then can an indicted party be affected, so far as the inquiry into the *legal qualification* of a grand juror is concerned by any disqualification that might have existed *anterior* to the actual empanelling and swearing of such juror upon the grand jury that indicts, but which does not exist at the time of such empanelling and swearing. The law is well-settled that the juror must be qualified *at the time he performs service as such;* but any inquiry into his qualifications for jury duty anterior to that time becomes entirely irrelevant in any issue questioning his qualifications at the time *he acts*. 2 Hawkins P. C., Ch. 43, sec. 13 ; Kelley vs. People, 55 N. Y., 565 ; Armsby vs. People, 2 N. Y., Supreme Court (Thompson

37

& Cook), 157; State vs. Williams, 2 Hill (So. Car.), 381 ; Thompson and Merriam on Juries, sec. 174. The plea in abatement itself shows that in the matter of the payment of the poll tax, the grand jury was qualified before being empanelled and sworn. As will be seen further on, they were qualified, so far as the payment of the last assessed poll tax was concerned, even if they had not, at the suggestion of the court, paid such tax assessed for the year 1892.

The record recites that in the empanelling of the jury for the trial of the defendant after his arraignment and plea of not guilty, that after the regular panel had been exhausted, the court ordered a special venire of thirty-five names to be drawn from the jury box as talesmen jurors from which to complete the panel. That after this special venire had been issued, but before the sheriff had made his return thereon, the State's counsel moved the court to proceed to empanel the jury from the talesmen who had reported, or who were present. To this the defendant objected on the ground that the sheriff had not yet made return on the special venire, and that he would therefore be embarrassed in selecting jurors, not knowing the number that had been summoned or would attend. The court overruled the objection and ordered the empanelling of the jury to proceed, as moved by the State. To this ruling exception was taken and it is assigned as error. The record further recites that the special venire of thirty-five names being exhausted without completing the jury, the court, on motion of

the State attorney, ordered a second special venire of twenty-five names to be drawn from the box from which to complete the jury. Some of the talesmen drawn on the second special venire having arrived in court, the State attorney moved the court to proceed with the empanelling of the jury from those of the second special venire who were present. The defendant again objected, as before, on the ground that the sheriff had not yet made his return upon said second special venire, and that he would be embarrassed in his selection of jurors, not knowing from what number he would have to select. This objection was again overruled and the empanelling of the jury ordered to be proceeded with as moved for by the State. To which ruling exception was taken, and it is also assigned as error. The record further recites that after one talesman juror drawn on the second special venire had been examined and challenged peremptorily by the State, another talesman who had been drawn on the first special venire was called as a juror, was qualified and was tendered by the State to the defendant. The defendant challenged the juror for cause on the ground that the special venire upon which he had been drawn from the box had been exhausted, and another special venire had been drawn from the box from which to complete the panel to try the cause. The court overruled the challenge, to which the defendant excepted, and this ruling is assigned as error.

The three last assignments are well taken. Our statute recognizes, and gives to persons on trial for

crime, the right to peremptory challenges of jurors. Section 2901, Rev. Stat., for the purpose of enabling the accused intelligently to exercise this right, makes provision for his being furnished with a list of the jurors, who are to be proposed for his trial, upon his request therefor. The list provided for is not merely the list of jurors *as drawn*, but contemplates a list of the jurors drawn and *summoned* to attend. The *return* of the sheriff upon a *venire* is the only authentic evidence as to who have been summoned to appear. Thompson and Merriam on Juries, sec. 78. From his *return* alone can an authentic list be made of those who have been *summoned*. In this case it was the prisoner's right to demand and have furnished to him, in advance of the *voir dire* examination of any of the jurors summoned on the two special *venires*, a list of those *that had been summoned* thereon. No such authentic list could have been supplied until the sheriff had made his return showing who had been summoned; consequently, until the return was made, no demand could be made for any such list, because there was nothing to make such a list from. By proceeding with the empanelling of the jury from the special veniremen as they arrived in advance of the sheriff with his return of the writ, the prisoner was deprived, not only of his right to demand a list of those summoned, but of the right to have such list supplied to him; and was, consequently, shut off from an intelligent and

judicious exercise of the right of peremptory challenge, having nothing to inform him as to who had been served or would appear.

It was error for the court, after going into the selection of jurors from the second special venire, to put that venire down and go back and call up a juror drawn upon a former special venire that had been declared to be *exhausted* when the second special venire was ordered to be drawn. Each venire should be completely perused and exhausted in fact before recourse can properly be had to another, issued because of such exhaustion. The defendant's challenge of the juror for the cause stated should have been sustained. When the first special *venire* was announced to have been exhausted and a second special *venire* resorted to, anyone drawn on such first *venire* at once lost his status as a venireman, and when tendered, as here, after the second *venire* had been gone into, was nothing more than a bystander. The State, when she elects to go to the jury box for special veniremen, must be confined, as well as the defendant, in the selection of a jury to such veniremen until their number is completely exhausted. And if successive special *venires* become necessary to complete the panel, each *venire* in turn must be exhausted in fact, before recourse can be had to the jurors summoned on another. Whenever this rule is departed from it trenches upon the right of the accused to be so situated as to be able to exercise the right of challenge with intelligent judgment.

The trial of the cause and the empanelling of the jury therein was commenced on the 15th of November, 1892. Two jurors, one of whom sat upon the jury, were challenged by the defendant for cause on the ground that they had not paid their poll tax assessed for the year 1892. These challenges were overruled by the court, and the jurors held to be competent, to which the defendant excepted, and such ruling is also assigned as error. The contention for the plaintiff in error upon this assignment is, that the poll taxes assessed for the year 1892 became due and payable on the first Monday in November of that year, and that it was the last assessed poll tax, and that these jurors being tendered subsequently to such first Monday in November, 1892, were disqualified because of the non-payment of such poll tax. By the first section of Chapter 4015, laws of 1891, it is provided that grand and petit jurors shall be taken from the registered voters who have paid their "last assessed capitation tax." Section 44 of the general revenue act passed at the same session of the Legislature of 1891, Chapter 4010, provides that all taxes shall be due and payable after the first Monday in November of each year, but no *coercion* or *enforcement* of the payment of any tax, by seizure or sale of property, or otherwise, is authorized until after the first day of the ensuing March. In arriving at the meaning of the words "*last assessed* capitation tax," in the jury act (Chapter 4015, *supra*), we must consider that particular feature of the law as being *in pari materia*

with the provisions of the revenue act prescribing the manner and time of the assessment *and collection* of the capitation tax. In the case of Smith vs. State, 29 Fla., 408, 10 South. Rep., 894, where the grand jurors whose action was questioned, were empanelled and acted in October before the poll tax for the then current year fell due, we held that "within the meaning of this statute the terms 'last assessed capitation tax' refers to a tax that is due and payable," and in that case the decision of the question presented in the present case was expressly reserved, *i. e.*, whether or not the disqualification for jury duty from the nonpayment of the "last assessed capitation tax," arises or attaches until *after* the time allowed by the revenue laws in which they *can be voluntarily paid*, without coercion, by the parties assessed. We can not think that it was the design of the Legislature to convert their legislation on the subject of the qualifications of jurors into an auxilliary system in aid of the collection of the State's revenues; or that the jury law was designed to hasten the payment of the poll tax by requiring it to be paid at an earlier date than the time limited therefor in the revenue law, under penalty of becoming disqualified for jury service. The two statutes, in so far as the payment of the poll tax is concerned, are *in pari materia*, and must be construed, if possible, to keep them in harmony the one with the other. Under the revenue act the party assessed is at liberty to pay his poll tax at any time between the first Monday in November of any year and the first

day of March of the ensuing year; and during that period he can not in any sense be deemed a *delinquent tax-payer*, nor, during that time, can he be subjected to any coercion or other penalty for its payment. The jury law we do not think was designed to change this status at all, but the real intention of the jury act was to exclude persons from jury service who, at the time of their presentation for such service, are poll tax *delinquents* from having faile1, neglected or refused to pay their last assessed poll tax *within the time allowed by law for its voluntary payment*. At the time of the challenge of these jurors on the ground of the non-payment of their last assessed poll tax, the time allowed by law for its voluntary payment by them had not expired; they were, therefore, not poll tax *delinquents*, and were not disqualified, in that particular, from jury service.

On cross-examination of the State's witness, Dr. Bothwell, who testified to the character of the wound of the deceased inflicted by the accused, and to an examination and probing thereof by himself, the defendant's counsel asked the witness if he (witness) did not sometimes drink to excess, upon which the witness appealed to the court as to whether he should answer such question; upon which the court ruled that the question as put was going too far, but that defendant's counsel could inquire of him as to his condition of sobriety at the time and on the occasion he was testifying about. To this ruling the defendant excepted and it

is assigned as error. We see no error in this. The question as put was too general. Whether the witness sometimes drank to excess or not had no pertinency to the case on trial, and the court ruled correctly in confining the inquiry of the cross-examination on this point to the particular occasion when the witness' condition as to drunkenness or sobriety would make an inquiry therein pertinent to the case at bar.

The following charge given by the court to the jury is also assigned and urged as error : "If from the evidence, beyond a reasonable doubt, you should believe that at the time in question, deceased and the prisoner got into a wordy altercation, and that the deceased was unarmed, and that the prisoner was armed with a common pocket knife, and that the prisoner struck the deceased the first blow with his fist, and thus provoked a personal difficulty ; and should further thus find that he thus provoked a fight without intent to cut deceased fatally, and without intent to kill him, and without intent to maim or disable him from the ability to fight or resist and protect himself in the fight ; and should further thus find that on recovering from the first blow the deceased sought to renew the fight, and approached the prisoner, and that the prisoner also approached the deceased and met him at the door, without intent to kill or to maim him as aforesaid, but with an intention alone of inflicting chastisement upon the deceased, and then and there stabbed the deceased with a pocket knife in the breast, and that then

and there he died of said wound so inflicted with the design last aforesaid ; then you may find the defendant guilty of manslaughter in the first degree.'' It is urged against this charge, first, that by it the jury were erroneously told that to constitute manslaughter in the first degree, the prisoner when he gave the fatal stab must have given it without any intent either to kill, or to ''maim or disable'' the deceased.

While it was true under our statute as it existed when this offense was committed, that if a party struck or wounded another *with the intent* to maim or disable any limb or member of such other, he would be, in the presence of such *intent,* engaged in the commission of a *felony;* and if death resulted from such blow, though there was no intent to kill, he would have been guilty of murder in the third degree, instead of manslaughter in the first degree; yet there was not a scintilla of evidence in the record before us upon which any idea of the crime of mayhem could have been predicated. This feature of the charge, therefore, was not predicated upon the facts, and should have been omitted therefrom.

Second. It is further contended that the charge invades the province of the jury by dealing with the facts. The mere reading of the instruction will make the untenableness of this contention apparent. ·

Third. It was further urged that this charge was erroneous because it instructed the jury that if they believed the defendant to have committed the act under the circumstances and without the intents recited in

such charge, that then it was manslaughter in the first degree. Under this objection it is contended that by the provisions of the Revised Statutes, that were in force at the time the defendant was indicted and tried, the prior existing specified degrees of manslaughter were abolished, and the prior existing punishments changed so as to make the minimum a fine not to exceed $1,000, and the maximum imprisonment in the State penitentiary not exceeding twenty years. That by this change in the law it was error to say that the defendant could be found guilty of manslaughter in the first degree, as the old law dividing the crime up into defined degrees with specific punishments for each, was repealed by the Revised Statutes. A complete answer to all this is that the crime was committed on the 6th day of June, 1892, before the Revised Statutes went into effect, and while the old law was in full force. Section 32, of Article III, of our Constitution provides as follows: "The repeal or amendment of any criminal statute shall not affect the *prosecution or punishment* ot any crime committed before such repeal or amendment." It is contended further that under the provisions of Section 2353, Rev. Stat., the defendant, upon conviction, was entitled to the mitigated punishment prescribed for manslaughter by the Revised Statutes. Under the plain terms of the constitutional provision above quoted we are much inclined to doubt this proposition, but, as the punishment assigned to the defendant in this case is applicable to the crime of which he was convicted under

both the old law and the new, it is unnecessary to de·cide the question of the constitutionality of legislation changing in any respect the prior prescribed punishments for crime committed prior to such change. Fourth. It is further urged against this charge that it excluded from the jury the right to determine whether the killing was justifiable or excusable. This contention is untenable. The court charged the jury fully upon justifiable or excusable homicide, and upon murder and manslaughter in the various degrees. The disputed charge was confined entirely to manslaughter in the first degree in connection with the facts and circumstances in proof; and when considered in connection with all of the other accompanying charges given to the jury, it is not at fault in the respect contended for.

In the sentence of the court pronounced upon the defendant it is expressed "that the minimum punishment for manslaughter in the first degree was seven years' imprisonment in the penitentiary," and this was the punishment assigned to the defendant. This also is assigned as error. The contention being that under the change of punishment made by the Revised Statutes, the minimum of a fine might have been imposed. We do not discover any reason or necessity for giving expression in the sentence of the court to the above-quoted assertion in reference to seven years being the minimum punishment for the offense. There was no necessity for incorporating it in the sentence of the court; but, as the sentence actually assigned

was proper, whether taken from the old law or the new, such an assertion embodied therein can not affect its validity as the sentence of the law whether the the superflous assertion be correct or incorrect. Giving utterance to it in the sentence was surplusage, as it neither added to nor detracted from the legal effect of the judgment pronounced. There is, therefore, no merit in this assignment.

The sending of the entire written charges of the court to the jury in their room is also assigned as error, upon the ground that because of erasures and interlineations therein the jury may have been misled thereby. As the case goes back upon other grounds we do not deem it necessary to discuss this assignment, as upon another trial the error, if any, in this respect may be cured.

For the errors found in the empanelling of the jury, the judgment is reversed and a new trial ordered.