JENKINS LAMBRIGHT AND ALBERT STEVENS, PLAINTIFFS IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. It is not a proper question to ask a venireman if he would find a man guilty on circumstantial evidence.

2. After a regular panel had been exhausted in the organization of a jury, the court proceeded with a special venire that had been summoned, and thereupon the accused objected to proceeding with the special venire, on the ground that a full regular panel of twelve persons had not been tendered. It appeared that the regular panel did not consist of twelve persons, but the cause of the deficiency in number was not shown, and no objection was made to the panel: *Held*, That it was not error for the court to proceed with the special venire after the perusal of the regular panel.

3. The recitals in a motion overruled do not of themselves afford evidence that they are true.

4. It is competent for a court to issue a special venire for additional jurors in anticipation of the exhaustion of a regular panel.

5. The provision in the Revised Statutes (sec. 1152) that no person shall be drawn to serve on a petit jury more than once during the same calendar year, does not create a disqualification, but simply provides a personal privilege to an exemption from jury duty for more than one term during the same calendar year.

6. A venireman had read in the papers all about the trial of S. for the murder of G., and had formed, and still entertained, an opinion as to his guilt or innocence, but knew nothing about the case against the accused, who were being tried for the murder of G., and the opinion which had been formed in reference to the guilt or innocence of S. would have nothing to do with the case against the accused: *Held*, That the venireman was a competent juror.

7. The trial court has authority under the statute (R. S. Sec, 1355) to authorize counsel to assist the State attorney, when the business of the State renders it necessary.

8. The statute (sec. 1093 R. S.) providing for the discharge of a jury by the court when they can not agree, confers upon jurors the legal right to be discharged from the consideration of a cause when, after due and thorough deliberation, they come into court for the second time, after being charged or re-charged, and avow their inability to agree upon a verdict, without requesting further explanation of the law.

9. The court must decide in the first instance whether the evidence of the *corpus delicti* is *prima facie* sufficient to permit confessions of the accused to go to the jury, and when the evidence of the *corpus delicti* has been admitted by the court, the jury must determine its sufficiency to establish the fact for which it was admitted, as any other fact before them.

10. The evidence of the corpus delicti *held*, in the present case, sufficient to admit confessions on the part of the accused.

11. It is not competent for a party who has received a mortal wound to state who inflicted the wound, unless the statement formed a part of the *res gestae*, or is admissible as a dying declaration.

12. All declarations or exclamations uttered by the parties to a transaction, and which are contemporaneous with and accompany it, and are calculated to throw light upon the motives and intention of the parties to it, are clearly admissible as parts of the *res gestae*. A more liberal statement of the rule as announced by many recent decisions is, that not only such decla-

566    SUPREME COURT.

Lambright and Stevens v. The State of Florida.—Opinion of Court.

rations as accompany the transaction are admissible as parts of the *res gestae*, but also such as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they were the result of premeditation or design.

13. Under the application of the rule above announced, in either form, to the facts of this case, *held*, that the statements offered in evidence as part of the *res gestae*, were not admissible.

14. The testimony in this case *held* sufficient to sustain the verdict of the jury.

Writ of error to the Circuit Court for Marion county.

The facts of the case are stated in the opinion of the court.

*W. K. Zewadski* and *Hugh E. Miller*, for Plaintiffs in Error.

*William B. Lamar*, *Attorney-General*, for the State.

MABRY J.:

Plaintiffs in error were indicted for the murder of George Gowen, and upon trial were convicted of murder in the first degree with a recommendation of mercy to the court. The case is here on writ of error to the judgment of the court imposing the penalty of the law upon the accused. Many exceptions were taken during the trial of the case, and numerous grounds were assigned for a new trial in a motion for that purpose which was overruled by the court. It is the duty of this court to consider all assignments of error properly made and argued here, but under a well-estab-

JUNE TERM, 1894. 567

Lambright and Stevens v. The State of Florida.—Opinion of Court.

lished rule assignments of error though properly made
and not argued are to be considered as abandoned.
The assignments of error argued by counsel for plain-
tiffs in error will be considered in this opinion, but
those not presented will not be discussed.

It is insisted that the court erred in refusing to per-
mit counsel for the accused to ask a venireman by the
name of Martin whether he would find the defendants
guilty on circumstantial evidence. The bill of excep-
tions shows that the juror named was asked if he
would find a man guilty on circumstantial evidence,
and the court ruled that it was not a proper question.
The record shows that this juror was challenged by the
defendants and did not sit in the trial of the case, nor
does it appear that the defendants had exhausted their
challenges when the panel was completed. On this
record it does not appear that any harm was done the
accused by reason of the ruling of the court, or that
they were not tried by a jury acceptable to them.
Furthermore we do not think that the question pro-
pounded to the juror was proper. Section 2850 Revised
Statutes provides that "no person whose opinions are
such as to preclude him from fining any defendant
guilty of an offense punishable with death shall be al-
lowed to serve as a juror on the trial of any capital
case." If the purpose of the question was to disqualify
the juror under this section, it is apparent that it was
not properly framed to elicit the necessary facts to dis-
qualify.

After the regular panel for the week had been ex-
hausted in organizing the jury the court proceeded
with a special venire that had been summoned, and
thereupon the defendants objected to proceeding with
the special venire on the ground that a full regular
panel of twelve jurors had not been tendered. The

court overruled the objection and defendants excepted. From the statement in the bill of exceptions it appears that the regular panel which was first taken up and exhausted did not contain twelve names, but there is nothing to indicate why the panel was not complete. The objection of the defendants came after this panel was exhausted, and was on the ground that they were entitled to a full regular panel of twelve persons. The act of 1893 (Chapter 4122, sec. 5) provides for the drawing and summoning of thirty persons to serve as grand and petit jurors for a term of court, and on the first day of the term it is made the duty of the judge "to place the names of the thirty persons so summoned, or so many of them as may appear in response to the summons, in a box, and draw therefrom the names of eighteen persons, who shall serve as grand jurors for the term, and the persons whose names remain in the box shall serve as petit jurors for the first week of the term." It is to be presumed, nothing to the contrary having been shown, that the absence of a full panel of petit jurors for the week was attributable to some good cause. If any of the thirty persons selected under the statute to serve as grand and petit jurors for the first week, or the twelve selected as a petit jury for any subsequent week, were absent and not served, or if any served were, for any valid cause, excused from jury service, the panel of the petit jurors would not consist of twelve persons. While the act referred to says nothing about supplying a deficiency that may exist in a jury list, it does provide that the persons whose names remain in the box after drawing the grand jury list shall serve as petit jurors for the first week of the term. Such a panel, though not composed of twelve names, would to the extent of the persons selected be

a proper jury list under the statute. We do not understand that the objection made goes to the extent of questioning the legality of the regular panel because it was not full, but it is claimed that the court should have completed the panel before tendering it to the defendants. It does not appear that defendants ever insisted on a full panel of twelve persons before proceeding with it; but, on the contrary, it does appear that the panel was exhausted without any objection on the part of the accused that it was not full. If the defendants had the right in the first place to demand that the panel for the week be supplied with other names until there were twelve persons on the panel for the week, a point not determined, they waived it by proceeding without objection until the list was exhausted. No attack was made on the regular panel, but counsel for the accused objected to proceeding further in the organization of the jury after the regular panel had been exhausted because twelve names were not on it.

Before proceeding with the special venire a motion was made to quash it on the grounds that it was issued before the regular panel was exhausted, and because there were on the special venire names of persons who had served as jurors at the same term of the court. It does not appear from the record whether the special venire was issued before or after the regular panel was exhausted. A motion was made to quash the special venire because it was issued before the regular panel was exhausted, and the court overruled the motion, but what were the facts before the court when the motion was overruled we do not know. The statute provides that " when, by reason of challenge or otherwise, a sufficient number of jurors drawn and summoned can not be obtained for the trial of any

cause in the county or circuit courts, the court shall cause qualified jurors to be summoned by the sheriff from the bystanders, or from the county at large, to complete the panel." Rev. Stats., sec. 1158. We do not see that the court is forbidden to issue a special venire until a regular panel has been exhausted, and we see no reason why the court can not in anticipation of a failure to obtain a jury out of one list, have another summoned to be in readiness if needed. If a jury should be selected before reaching the venire summoned in anticipation of its necessity, it would not be needed, but if it should become necessary, no possible detriment could befall the accused because it was summoned before the completion of another panel. It is often necessary that such a venire should be summoned in order to prevent needless delay in the proceedings of the courts, and such has been the practice in *nisi prius* trials. The language of the statute does not prohibit such practice, and it should not be so construed. The court would not be authorized, of course, to depart from one venire and resort to another out of its order. Mathis vs. State, 31 Fla., 291, 12 South., 681; Collins vs. State, 31 Fla., 574, 12 South., 906.

It was made to appear that one of the jurors called stated that he had served at that term of the court, and it was objected by the defense that no person could be drawn to serve on a petit jury more than once during the same calendar year. While it is shown that the juror had served at that term of the court, it does not appear that he had been regularly drawn to serve as a juror at that term, or within twelve months previously. The provisions of the Revised Statutes (sec. 1152) that no person shall be drawn to serve on a petit jury more than once during the same calendar year,

JUNE TERM, 1894.                 571

Lambright and Stevens v. The State of Florida.—Opinion of Court.

does not create a disqualification, but simply provides a personal privilege to the citizen as an exemption from jury duty for more than one term during the same calendar year. We so construed the statute in the case of Blount vs. State, 30 Fla., 287, 11 South., 547, and this case is decisive of the objection raised here. Furthermore the record shows that the juror sought to be disqualified did not sit on the case, and it does not appear how he got excused.

It is further insisted that the court erred in not sustaining defendants' challenge for cause of a venireman named Peter McIntire. It appeared that one Snyder had been tried for the murder of George Gowan, and this juror had read in the papers all about the trial of Snyder, and had formed an opinion as to his guilt or innocence, and entertained the same opinion. The juror stated, however, that he knew nothing about the case against the accused, and that the opinion formed in reference to the Snyder case would have nothing to do with the case against the defendants. He was clearly competent, and the court did not err in over-ruling the challenge for cause.

Another contention is that the court erred in refusing the request of the defendants to have Dave English, a State witness, put in charge of an officer. Dave English was one of the principal witnesses for the State, it being through his instrumentality that certain confessions of the crime charged were obtained from the defendants, and after he had been examined as a witness, and as he was leaving the witness stand counsel for defendants requested that he be not allowed to communicate or associate with any of the other witnesses. The court charged the witness not to have any intercourse with any of the witnesses, or any other person, about the case, but declined to

572　　　SUPREME COURT.

Lambright and Stevens v. The State of Florida.—Opinion of Court.

put him in charge of an officer, to which defendants excepted. Discussion is out of place. Manifestly there was no error in the ruling of the court.

A further ground of contention is that the court erred in allowing private counsel to assist the State Attorney in the prosecution of the case against the accused. It appears that after the jury had been empanneled counsel for defendants announced to the court that counsel were assisting the State Attorney, and an objection was made on the ground that there was no necessity for it, and that private counsel had no authority to appear for the State unless acting for and by authority of the State and under oath. Thereupon the court directed the counsel to be sworn as assistants of the State Attorney, and defendants objected to the counsel being sworn at that stage of the case and excepted to the ruling of the court. It appears that the assistant counsel were procured by and with the consent of the court, and they were sworn as such counsel by the court. The statute (sec. 1355, Rev. Stats.), provides that "the State Attorney, by and with the consent of court, may procure the assistance of any member of the bar when the amount of the State business renders it necessary, either in the grand jury rooms to advise them upon legal points and framing indictments, or in court to prosecute criminals. But such assistant shall not be authorized to sign any indictments or administer any oaths, or to perform any other duty except the giving of legal advice, drawing up of indictments, and the prosecuting of criminals in open court. His compensation shall be paid by the State Attorney, and not by the State." The objection made, that assistant counsel could not appear in the case without being sworn, was met by having the counsel sworn, and the presumption is, from

the action of the court, that the State business rendered it necessary that such counsel be procured. There is no showing in the record that the assistant counsel were procured by any other person than the State Attorney, or that they acted in the trial of the case otherwise than under the authority of the court. The court has the authority under the statute to authorize counsel to assist the State Attorney when the business of the State renders it necessary, and there is nothing in the record to show that the action of the court was unauthorized in permitting counsel to assist the State Attorney in the trial of this case. Nothing was decided in the case of Eldridge vs. State, 27 Fla., 162, 9 South., 448, against the right of the court to do what it did in the present case.

Another ground of objection is, that the court erred in sending the jury back after they, for the second time, returned into court and announced that they could not agree upon a verdict. The record does not support this contention. It appears that some time after the jury had retired to consider the case they returned and asked the court to give them the last instruction given, and the court in the presence of the accused and their counsel gave the instruction requested, and then a recess of the court was taken until 8:30 o'clock next morning. At that time the jury returned into court and announced that they did not believe they could agree upon a verdict, and requested the court to redeliver to them certain portions of the charges given them, which the court did in the presence of the accused and their counsel. The jury was then directed to retire and further consider of their verdict; and after being out some time, returned into court with a verdict. When the jury returned into court the first time, it was for the purpose of having

the court give them a portion of the charge, and when they returned the second time and announced that they did not believe they could agree, a further request was made for portions of the charge to be given them by the court. The statute provides that "when a jury after due and thorough deliberation upon any cause, shall return into court without having agreed on a verdict, the court may explain to them anew the law applicable to the case, and may send them out again for further deliberation; but if they shall return a second time without having agreed on a verdict, they shall not be sent out again without their own consent, unless they shall ask from the court some further explanation of the law." Rev. Stats., sec. 1093. In Adam vs. State, 34 Fla., 185, 15 South., 905, we held that the statute confers upon juries the legal right to be discharged from any cause, when, after due and thorough deliberation, they come into court for the second time, after being recharged, and avow their inability to agree upon a verdict, without requesting further explanation of the law. The jury did not announce to the court that they could not agree upon a verdict after they sought and obtained further explanation of the law, and the court did not err in sending them back after re-charging them as requested.

The assignments of error based upon the grounds in the motion for a new trial, that remarks of counsel for the State in addressing the jury, and the statement of the court to the jury when they were directed to retire and further consider their verdict, were prejudicial to the accused, are not supported by anything appearing in the bill of exceptions. The motion for a new trial is not evidence of its recitals, and in the absence of sufficient evidence in the bill of exceptions to sustain

the motion, the presumption is that it was correctly overruled.

In the case before us the confessions of the acused were mainly relied upon for a conviction.   It is insisted for the accused that the court erred in holding that the *corpus delicti* had been sufficiently proven to admit the confessions in evidence, without first having the jury to pass upon the question of the sufficiency of the proof as to the *corpus delicti*.   The position assumed by counsel, as we understand it,  is, that it is the province of the jury to determine whether the proof of the *corpus delicti* is sufficient to admit evidence of confessions of the crime on the part of the accused. This position is not correct.   The court must decide in the first instance whether the evidence of the *corpus delicti* is *prima facie* sufficient to allow the confessions to go to the jury,  and when the evidence of the *corpus delicti* has been admitted by the court, the jury must determine its sufficiency to establish the fact for which it was admitted, as any other question of fact before them.   The decision of the court in admitting evidence of the *corpus delicti* does not bind the jury, as the province of the court in such particular is only to determine whether sufficient evidence has been adduced to allow it to go to the jury for their determination.   Winslow vs. State, 76 Ala., 42.   The proof of the *corpus delicti*, in order to sustain a conviction, must be such as to exclude from the minds of the jury every reasonable doubt as to the existence of that fact. This is the established rule, and is clearly stated in the case of State vs. Flanagan, 26 W. Va., 116, cited by counsel for plaintiffs in error.   It is also a fundamental rule of ancient origin that no person shall be convicted, or involved in the consequences of guilt on extra judicial confessions without proof *aliunde* of the

576        SUPREME COURT.

Lambright and Stevens v. The State of Florida.—Opinion of Court.

*corpus delicti;* and before such confessions should be allowed to go to the jury, there should be proof before the court tending to show that the offense to which the confession relates has been committed. In some cases the evidence establishing the existence of a crime also points out the guilty agent, while in others the evidence of the crime is visible, but its perpetrator is left in mystery. A criminal charge against an accused involves both the commission of an offense and his guilty agency in connection therewith, and both of these propositions must be fully established before the jury. Anderson vs. State, 24 Fla., 139, 3 South., 884. The authorities cited by counsel for plaintiffs in error do not sustain the view that the jury should in the first instance pass upon the sufficiency of the proof as to the *corpus delicti*, before confessions can be admitted in evidence. In Gray vs. Commonwealth, 101 Penn. St., 380, S. C. 47 Am. Rep., 733, it is said: "The true rule in such cases is believed to be this: when the Commonwealth has given sufficient evidence of the *corpus delicti* to entitle the case to go to the jury, it is competent to show a confession made by the prisoner connecting him with the crime. Under such circumstances the jury should first pass upon the sufficiency of the evidence of the *corpus delicti*. If it satisfies them beyond a reasonable doubt that the crime has been committed, then they are at liberty to give the confession such weight as it is entitled to, taking into view the circumstances surrounding it, and the extent to which it has been corroborated." This case holds that the *corpus delicti* must be established beyond a reasonable doubt, and that there can be no conviction without such proof. In passing upon the entire case submitted to them the jury must first ascertain from the proof whether a crime has been committed,

and if convinced beyond a reasonable doubt on this point, they are to see whether or not the accused is criminally connected therewith. There is nothing in the case to indicate that it was intended to hold that the jury in the first instance should pass upon the sufficiency of the proof of the *corpus delicti* before confessions of the accused could be admitted in evidence. This is the province of the court, and not the jury. In the next place it is insisted that conceding the right of the court to determine in the first instance the sufficiency of the proof of the *corpus delicti* to admit in evidence the confessions of the accused, the court erred in so ruling in this case. The deceased, whose death it is alleged in the indictment before us was accomplished by the accused, was shot in his own house and died from the effects of the wound. There was produced no witness who saw him shot, and no one saw him until some time after he was shot. He lived in Silver Springs Park, Marion county, Florida, and a State witness testified that between eight and nine o'clock in the evening he heard the report of a pistol in the direction of the house of deceased, and early next morning witness went to the house and called deceased, but he made no answer. About eleven o'clock same morning witness returned and found that deceased was shot. Another State witness who lived about one-eighth of a mile from the house of the deceased heard two shots and a horn blow, or something he did not understand, in the direction of the house, about eight or nine o'clock in the evening; and next morning between seven and eight o'clock witness, in company with another party, went to the house of the deceased, and the other party rapped on the door, and deceased asked who was there, and being asked what

37

the matter was, said he was sick. Witness went home, and did not then see deceased, but returned in one-half or three-fourths of an hour and saw deceased. He was shot, and when seen was laying on the outside of his bed with his clothes on, and there was blood on his left side and on his shirt. When witness returned he was in company with other persons, and deceased was asked what was the matter, and said that he had been shot. An effort was then made to get in all the windows, and the bed-room window of deceased being found unfastened, one of the parties was put through it and opened the door, when all went in the house. Witness did not hear deceased say much. He lay "moaning," and witness heard him say nothing but that he was shot. Witness discovered a hole in the door through which a bullet had gone, and a bullet was found. A physician saw deceased about ten o'clock of the same day, and on examination found that he had been shot, the ball entered near the right scapula. The wound was pronounced by the doctor to be mortal, and the deceased died same day, in the evening. When first seen by the doctor, about ten o'clock in the morning, deceased was very weak. A very large track was discovered in the morning at the gate, near the house of deceased, and two witnesses who had seen tracks made by the accused, stated that to the best of their knowledge the track discovered near the gate compared exactly with that made by one of the accused. It was testified by another witness that about one month before the deceased was shot, the other accused stated to witness that he would get square with deceased if he could. This statement was made in a conversation in which the accused said he had been shooting pigeons around the house of deceased, and wanted to know if deceased could stop

JUNE TERM, 1894.                579

Lambright and Stevens v. The State of Florida.—Opinion of Court.

him.   It appears from the testimony of R. C. Bogie, a
witness examined by the accused, that the deceased
stated during the morning of the day he died, that he
was shot during the previous evening.   Some two
months after deceased was buried his body was ex-
humed and a number 38-calibre pistol ball extracted
therefrom.   The court permitted, in addition to the
proof relative to the death of the deceased, voluntary
statements made by the accused some six months
afterwards, that they called the deceased to his door
about nine o'clock the night he received the fatal
wound, and shot him, when he shut the door, blew a
horn, and they ran away.   Other details of the shoot-
ing, as given in the confessions, need not be men-
tioned.

In our opinion the court did not err in allowing the
confessions to go to the jury for their consideration.
It was not the province of the court to determine the
sufficiency of the proof to establish the *corpus delicti*,
as this is included in the charge against the accused,
but it is the duty of the court to determine in the first
instance whether there is sufficient evidence tending
to show the *corpus delicti*, in order that the confes-
sions of the accused may be admitted in evidence for
the consideration of the jury.   On the showing made
in the case before us, the substance of which we have
given, we think it was sufficient to permit the con-
fessions to go to the jury, and that the court did not
err in so holding.

The witness Bogie, testifying for the accused, stated
that he asked the deceased between nine and eleven
o'clock of the day that he died what was the matter
with him, and he stated that he was shot.   The follow-
ing question was then propounded to the witness by
the defense, *viz:*  "Did he tell you who shot him, and

if so, state his reply?" The State objected to the question, and the court refused to allow it answered; and it is now insisted that there was error in the ruling. What was expected to be brought out by the question is not indicated in the record further than that disclosed by the question itself. In the investigation of this point we have labored under a bias in favor of allowing the statement of the deceased as to who shot him, to go to the jury, but, under the facts of this case, have been unable to find any sound rule of law permitting it. It is not claimed that such statement was admissible as a dying declaration. The record negatives a proper foundation for its admission under this head, and counsel for the accused expressly disclaimed the right to have it admitted on this ground. It was claimed that the statement of the deceased as to who shot him was admissible as forming a part of the *res gestae*, and this is the ground assumed in argument here in support of the contention that the court erred in excluding the question. If the deceased stated who it was that shot him, and this statement formed a part of the *res gestae*, there can be no doubt about its admissibility. The decision of the trial court was adverse to the view that the statement of the deceased was a part of the *res gestae*, and this is the question that we must determine. In the case of the International & Great Northern Railway Company vs. Anderson, 82 Texas, 516, 17 S. W., 1039, it is said: "All declarations or exclamations uttered by the parties to a transaction, and which are contemporaneous with and accompany it, and are calculated to throw light upon the motives and intention of the parties to it, are clearly admissible as parts of the *res gestae*. Very respectable authorities restrict the doctrine of *res gestae* within the limits indicated by the

JUNE TERM, 1894.    581

Lambright and Stevens v. The State of Florida.—Opinion of Court.

foregoing definition, and exclude all declarations which are a narrative of past occurrences. This is a convenient and salutary rule, and probably the more logical one; and if it were an open question in this State we should hesitate long before adopting another. Another rule, applied in many of the American courts at least, is to admit as parts of the *res gestae* not only such declarations as accompany the transaction, but also such as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by, or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design." This quotation shows the difference between the restricted and the more liberal application of the rule as applied by the courts at the present time. In the case of Commonwealth vs. McPike, 3 Cush., 181, S. C., 50 Am. Dec. 727, the defendant was indicted for the murder of his wife, and it appeared that the deceased ran up the stairs from her room in the night bleedlng, and crying murder. Another woman, into whose room she was admitted, went, at her request, for a physician. A third person who heard the cries went for a watchman, and on his return went to the room where deceased was and found her on the floor bleeding profusely. She said that the accused stabbed her, and the Supreme Court of Massachusetts held that her statement was properly admitted as part of the *res gestae*. Mr. Wharton, in his book on Criminal Evidence, considers the decision in this case unsound. Wharton's Crim. Ev., sec. 262. He says: "The distinguishing feature of declarations of this class is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate concomitants or conditions of

582 SUPREME COURT.

Lambright and Stevens v. The State of Florida.—Opinion of Court..

such act, and are not produced by the calculated policy of the actors. In other words, they must stand in immediate causal relation to the act, and become part either of the action immediately producing it or of the action which it immediately produces. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act." *Ibid.* sec. 263. The time intervening the transaction or act and the declaration in reference thereto is to be considered, but is not of itself controlling. It is said in State vs. Garrand, 5 Oregon, 216: "To make declarations a part of the *res gestae* they must be contemporaneous with the main fact, but in order to be contemporaneous they are not required to be precisely concurrent in time. If the declarations spring out of the transaction, if they elucidate it, if they are voluntary and spontaneous, and if they are made at a time so near to it as reasonebly to preclude the idea of deliberate design, they are then to be regarded as contemporaneous." This is the rule stated by Judge Nisbet for the court in the well-considered case of Mitchum vs. State, 11 Ga., 615. The tendency of the courts seems to be in favor of applying the liberal rule on this subject, and, as held by the Supreme Court of the United States in Insurance Company vs. Mosley, 8 Wall., 397, "though generally the declarations must be contemporaneous with the event, yet where there are connecting circumstances, they may, even when made some time afterwards, form a part of the whole *res gestae.*" Each case must of course depend upon its facts, and the trial court must exercise a sound discretion in determining whether the facts bring the offered evidence within the rule. Whether we apply the restricted or the liberal rule on the subject, our

## JUNE TERM, 1894. 583

Lambright and Stevens v. The State of Florida.—Opinion of Court.

examination of the authorties has satisfied us that the ruling of the court excluding the statement of the deceased as not being a part of the *res gestae*, can not be held as error. The following authorities containing discussions of the rule are cited: Smith vs. State, 53 Ala., 486; State vs. Pomeroy, 25 Kansas, 349; Boothe vs. State, 4 Texas App., 202; Warren vs. State, 9 Texas App., 619, S. C., 35 Am. Rep., 746; Irby vs. State, 25 Texas App., 203, S. C., 7 S. W., 705; Fulcher as. State, 28 Texas App., 465, 13 S. W. 750; State vs. Davidson, 30 Vt., 377, S. C., 73 Am. Dec., 312; State vs. Carlton, 48 Vt., 636; State vs. Dominique, 30 Mo., 585; Crookham vs. State, 5 W. Va., 510; Hall vs. State, 48 Ga., 607; Savannah, Florida & Western Ry. Co. vs. Holland, 82 Ga., 257, 10 S. E., 200; Bradford City vs. Downs, 129 Penn. St., 622, 17 A., 884; Bishop's Crim. Pro. sec. 1085. The deceased, according to the evidence, was shot between eight and nine o'clock one evening, and it was near nine o'clock next morning when he was asked by the witness Bogie who shot him. He was then very weak, but the testimony does not show what had been his condition from the time he was shot up to that time. He then expressed the opinion that he would recover. It may be inferred from the circumstances that he was in a helpless condition, and was unable to get up and open the door of his house when parties called in the morning; but still there is no sufficient showing, in our judgment, to reasonably exclude the presumption that any statement made by him so long a time after he was shot was from deliberate design. His statement, under the circumstances, would be the narration of a past transaction without sufficient connecting circumstances to characterize it as a spontaneous utterance or necessary incident of the

transaction, and preclude the idea of deliberation or design.

This disposes of all the assignments of errror presented by counsel, except that the evidence is not sufficient to sustain the verdict. We will not undertake to set out in this opinion the evidence in the case, or enter upon any extended discussion of it. The credibility of the witnesses for the State was solely a question for the jury, and we can not reverse on the ground that the witnesses did not tell the truth. The testimony before us, if true, is sufficient to sustain the verdict. Free and voluntary confessions on the part of the accused of the crime charged were testified to by two witnesses, and the confessions testified to were corroborated by other testimony in several particulars. Gray vs. Commonwealth *supra.* These confessions were obtained through the instrumentality of detectives who testified to them, but their credibility was for the jury, and not for the court to settle. We see from the charges given that the court cautioned the jury as to the character of such evidence, and the verdict rendered having recieved the sanction of the court, we are unable to disturb it.

The judgment is affirmed, and it is so ordered.