WILBURN SHIVER, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An indictment under Section 2474, Revised Statutes, for fraud-

ulently altering and changing the marks and brands of an animal, to-wit: a steer, belonging to another, with intent to claim the same, need not allege the name of the owner of the mark and brand as altered; and an allegation therein that the fraudulent alteration was effected by defendant "with intent to claim said steer," is sufficiently definite to apprise him of the specific intent charged, and to enable him to prepare his defense to that branch of the charge against him.

2. The formal conclusion of indictments whereby it is alleged that the acts charged are "contrary to the form of the statute" or "against the peace and dignity" of the State, is not a matter of substance, but formal merely, and under Section 2893, Revised Statutes, it is no longer material that the indictment omits such conclusion.

3. A plea in abatement to the effect that a member of the grand jury that found an indictment was not a qualified juror at the time his name was selected and placed in the jury box by the county commissioners, but with no allegation that the juror was disqualified at the time he was empanelled, or performed service as such, is bad.

4. An application for a continuance upon the ground of the absence of a witness must show that the applicant has exercised due diligence to procure the attendance of such witness, or to procure his deposition if the law provides for taking such deposition.

5. Motions for change of venue in criminal cases are addressed to the sound judicial discretion of the presiding judge, and where a motion of this character, based upon the ground that public sentiment is such that a fair and impartial trial can not be had in the county, is supported only by a defendant's affidavit, an appellate court will not reverse a ruling denying such motion, in the absence of some showing that the defendant was prevented from securing corroborative evidence by hostile public sentiment.

6. An appellate court will not reverse the ruling of the trial court overruling a challenge for cause to a proposed juror, unless the grounds of challenge are sustained by proof offered in support thereof, or are otherwise shown to be true by the record.

7. An instruction to the effect that the testimony of an accomplice is competent evidence, the credibility of such accomplice

is for the jury to pass upon as they do upon any other witness; while the testimony of an accomplice will sustain a verdict when uncorroborated, yet such testimony must be received with great caution; but if such testimony carries conviction and the jury are convinced of its truth, they should give to it the same effect as would be allowed to a witness who is in no way implicated in the offence, is not erroneous.

8. A general assignment of error alleging error in the refusal to give a number of instructions asserting separate and distinct propositions of law will be overruled if any one of such instructions·be found to have been properly refused.

9. If in any case a judgment can be reversed for failure of the trial judge to define the term "reasonable doubt" when he has instructed the jury that they must be satisfied of defendant's guilt beyond a reasonable doubt and give him the benefit of every such doubt, it can only be had in cases where the party complaining of such omission presents to the trial judge an instruction containing a correct definition of the term, and ·excepts to the court's refusal to give it.

Writ of error to the Circuit Court for Osceola county.

The facts in the case are stated in the opinion of the court.

*E. K. Foster, N. P. Bryan, Clark & Gibbons*, for Plaintiff in Error.

*The Attorney General* and *Alex. St. Clair-Abrams*, for Defendant in Error.

CARTER, J.:

At the Fall term, 1897, of the Circuit Court for Osceola county, plaintiff in error was indicted for fraudulently altering and changing the marks and brands of animals with intent to claim the same. The indictment contained five counts: the first charging that he, in

said county, on July 15, 1897, "did fraudulently alter and change the marks and brands of a certain animal, to-wit: one brindled steer of the property of Samuel Summerlin, the mark having been changed from swallow-fork and underbit in one ear and underbit in the other, to crop in one ear and sharp in the other, and the brand having been altered from.

with intent to claim said steer."    Then followed four other counts each beginning "and the jurors aforesaid on their oaths," &c., the last one ending with the formal·conclusion beginning "contrary to the form of the statute," etc.    The defendant moved to quash the indictment, which motion was sustained as to the fifth count, but denied as to the others.    Upon the trial defendant was found guilty as charged in the first count, and from the sentence imposed sued out this writ of error.

The defendant moved in arrest of judgment upon the ground, among others, that the first four counts of the indictment failed to charge that the offence was committed "contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Florida," and the motion was denied.

The indictment was based upon Section 2474, Revised Statutes, which reads: "If any person shall fraudulently alter or change the mark or brand of any animal or shall fraudulently mark or brand any unmarked animal, with intent to claim the same, or to prevent identification by the true owner or owners thereof, the person or persons so offending shall be punished," etc.

1. In passing upon the motion to quash, we shall consider the sufficiency of the indictment only as respects the specific objections pointed out, which are two, *viz*: the failure to allege the name of the owner of the mark and brand as altered and the failure to allege whether defendant intended to claim the property as his own or that of another. As to the first objection, there is nothing in the statute which requires such allegation. It is the fraudulent altering or changing of the mark or brand upon an animal of another with intent to claim the same that is denounced by the statute, and it is not a necessary ingredient of the offence that the altered mark or brand should be claimed by the defendant or any other person. The ownership of the altered mark or brand might constitute a circumstance proper to be considered in determining the question of defendant's intent in effecting the alteration, but the statute does not make it an essential ingredient of the offence, so as to require it to be noticed in framing the indictment. In State v. O'Neal, 7 Iredell (N. C.) 251, text 254, speaking of an indictment under a statute somewhat similar to the one under consideration the court say: "It is made criminal by the statute knowingly to alter it with intent to defraud, and it is a matter of no importance into whose mark it is altered; it is the wilful alteration that constitutes the offence."

The indictment was good also as against the second objection. The allegation "with intent to claim said steer" follows substantially the language of that part of the statute which defines the intent made an ingredient of the offence, and is sufficiently definite to apprise the defendant of the specific intent charged against him, and to enable him to prepare his defense thereto.

2. The formal conclusion of indictments whereby it is alleged that the acts charged are "contrary to the

form of the statute," or "against the peace and dignity
of the State," is not a matter of substance, but formal
merely.  Commonwealth v. Freelove, 150 Mass. 66, 22
N. E. Rep. 435; Brown v. State, 13 Ark, 96; Castro v.
The Queen, L. R. 6 App. Cas. 229. At common law its
omission was a formal, but nevertheless fatal defect, and
in some of the States there are constitutional or statu-
tory provisions requiring its insertion in all indictments.
We have no such provisions in this State, and with us
the common law rule prevails unless, it has been
changed by statute.  Section 2893, Revised Statutes,
reads:  "No indictment shall be quashed, or judgment
be arrested, or new trial be granted, on account of any
defect in the form of the indictment or of misjoinder of
offences, or for any cause whatsoever, unless the court
shall be of the opinion that the indictment is so vague,
indistinct and indefinite as to mislead the accused and
embarrass him in the preparation of his defense or ex-
pose him after conviction or acquittal to substantial
danger of a new prosecution for the same offence."
Under the broad language of this statute this rule of
the common law is abolished, and it is now no longer
material that the indictment omits the formal conclu-
sion.  Michael v. State, 40 Fla. 265, 23 South. Rep.
944; Frisbie v. United States, 157 U. S. 160, 15 Sup.
Ct. Rep. 586; State v. Kirkman, 104 N. C. 911, 10 S.
E. Rep. 312; Rice v. State, 3 Heisk. (Tenn.) 215; Bolln
v. State, 51 Neb. 581, 71 N. W. Rep. 444.  It is true
that the original act from which the quoted section was
compiled (Section 1, Chap. 1107, act of February 2,
1861,) contained after the word "offences" the addi-
tional words "or of failure to conclude in proper form
against the statute or statutes," and that these words
were dropped by the revisers in bringing the act for-
ward in the revision, but we do not think that the omis-

sion of this tautologous expression requires us to place a construction upon the section different from that stated above, because the language retained is clear and explicit that defects in the form of the indictment shall not invalidate it, and the omitted words added nothing to the true meaning of the statute, but encumbered it with useless verbiage.

3. The defendant pleaded in abatement that a member of the grand jury that found the indictment was not, at the time his name was selected and placed in the jury box by the County Commissioners, a qualified juror. The plea did not attempt to deny that the juror was qualified at the time he was empanelled and when he performed service as such, and under the decision in Collins v. State, 31 Fla. 574, 12 South. Rep. 906, the State's demurrer to this plea was properly sustained.

4. The indictment against defendant was found October 7, 1897, and on the next day defendant was arraigned, pleaded not guilty, and the case was continued. The court adjourned until January 17th, 1898, at which time he failed to appear and judgment was entered against the sureties on his appearance bond. On July 26, 1898, another capias issued for the defendant and it was executed on the same day by arresting him and requiring him to give another bond. No further steps appear to have been taken in the case until it was called for trial at the Spring term held in March, 1899. The defendant then moved for a contiuance upon the ground of the absence of a witness. The affidavit stated that on February 28, 1899, the defendant procured a subpoena for the witness which had not been served, the sheriff making a return that the witness could not be found in the county; that the witness went with defendant to New Mexico, but afterwards left him; that to the best of defendant's information and belief the

witness resided in Osceola county, but if he was not in
that county affiant believed he was in Virginia and be-
lieved he could obtain his address and deposition by the
next term of the court.   The application for continu-
ance was refused.   Where a party applies for a contin-
uance on the ground of the absence of a witness, he
must show that he has exercised due diligence to pro-
cure the attendance of such witness, or his deposition
if the law provides for taking such deposition.   Tested
by this rule, it is manifest that we can not interfere
with the ruling denying the continuance.   The defend-
ant was arrested the second time on July 26, 1898, and
it behoved him to proceed with reasonable diligence
to prepare for trial.   His affidavit shows that he knew
this witness was a most important one, as to facts known
to no other person save defendant himself, yet he takes
no steps to secure his attendance until February 28,
1899, when a subpoena is issued which the sheriff re-
turns not executed because the witness could not be
found in the county.   When this return was made is not
shown; when the witness went with defendant to New
Mexico, and when he left there, is not stated; nor does
the affidavit state that defendant has made any efforts
to ascertain the whereabouts of the witness.   It states
that to the best of defendant's information and belief
the witness resided in Osceola county, but in what par-
ticular part of the county and the sources of the infor-
mation are not stated, nor any facts showing that such
information was reliable, and as against this statement
we have the sheriff's return that the witness could not
be found.   The defendant also stated that he believed
the witness, if not in that county, was in Virginia, and
believed he could obtain his address and deposition by
the next term, but no facts justifying such belief are
stated, nor is there any showing that defendant had en-

deavored to ascertain if such belief was justified by the facts. The showing as to diligence was wholly insufficient, and the court's discretion in denying the application for a continuance was not abused. Golden v. State, 19 Ark. 590; Hall v. State, 8 Ind. 439; Territory v. Anderson, 4 N. M. 213; Litchfield v. Daniels, 1 Colo. 268; City of Freeport v. Isabell, 93 Ill. 381.

5. The defendant moved for a change of venue, upon the ground that public sentiment was such that he could not get a fair and impartial trial in Osceola county, and filed in support of his motion his own affidavit which was wholly uncorroborated. The State in opposition filed affidavits from numerous residents of Osceola county who claimed to be familiar with public sentiment, to the effect that while the people of the county generally were opposed to all crimes, there was no prejudice against individuals charged with crime such as would prevent a fair and impartial trial, all expressing the opinion and belief that defendant could secure a fair trial in that county. The State also filed other affidavits denying specific allegations in the defendant's affidavit. Motions of this character are addressed to the discretion of the presiding judge, and we find nothing in this record which justifies us in interfering with his ruling denying defendant's application. Even if the allegations of defendant's affidavit were sufficient, if true, to require a change of venue, we can not under our uniform rulings reverse the decision of the trial judge, where the only evidence of the existence of the facts alleged as grounds to change the venue consists of the uncorroborated affidavit of the defendant and there is no showing that he was prevented from getting corroborative evidence by hostile public sentiment. Adams v. State, 28 Fla. 511, 10 South. Rep. 106;

Leslie v. State, 35 Fla. 171, 17 South. Rep. 555; Shepherd v. State, 36 Fla. 374, 18 South. Rep. 773.

6. Charles Strickland, a proposed juror, stated that he was summoned to serve as a juror by C. F. Prevatt, sheriff. The bill of exceptions states that thereupon "defendant challenged for cause, that it was the same C. F. Prevatt referred to in the affidavit for change of venue as the sheriff of the State of Florida for Osceola county, and who is a member of the Stockmen's Association, and, as such member, pledged to prosecute to the full extent of the law, the defendant, and which fact has not been denied by the said sheriff." The court overruled the challenge, and the juror was sworn and sat upon the jury which convicted defendant. Had it been proven that the grounds stated in the challenge were in fact true, a very serious question would be presented for our consideration. But no evidence was offered in support of the objections urged in the challenge, and there was nothing of record in the case showing that the facts stated as grounds of objection were true. The objections referred to the affidavit for change of venue, and if we can properly consider that affidavit in passing upon this assignment of error, its allegations are insfficient to prove the matters stated as grounds of challenge. The allegations of this affidavit are "that the sheriff of the county and the clerk of the Circuit Court, your affiant is informed, and upon such information charges, are members of said assocition." This statement is merely hearsay, and can not be taken as proof that the grounds of objection were in fact true, but merely that defendant had been so informed. The challenge was properly overruled.

7. During the examination in chief of Van B. Curry, one of the State's witnesses, the counsel for defendant stated to the court: "I should like to inquire if the

witness is under indictment, and if he is, the court should protect him;" to which the court replied: "The State does not seem to be concerned about it; and I do not see that he needs further protection;" to which remark of the court defendant excepted. The witness continued giving his testimony without claiming any privilege, and upon cross-examination by defendant was interrogated at length as to his motives in testifying and as to indictments pending against him. The objection urged to the remark of the court is that it was an intimation in the hearing of the jury as to the weight the judge attached to the witness' statement and testimony as it was to be given, but we fail to see that the remark contained any such intimation. The remark seems to indicate that in the court's opinion the claim for protection to the witness should come from the State whose witness he was, but we see nothing in it which the jury could legitimately construe as an intimation from the judge, upon the credibility or weight to be attached to the witness' testimony.

8. Exceptions were taken to certain remarks of the State Attorney and his assistant in addressing the jury, but we see nothing in the remarks that exceeded the bounds of legitimate argument.

9. An exception was taken to the following instruction: "The testimony of an accomplice is competent evidence, and the credibility of such accomplice is for the jury to pass upon as they do upon any other witness, and while the testimony of an accomplice will sustain a verdict when uncorroborated, yet the testimony of an accomplice must be received with great caution; but if the testimony carries conviction and the jury are convinced of its truth they should give to it the same effect as would be allowed to a witness who is in no respect implicated in the offence." This instruction,

while somewhat inartificially worded, substantially states a correct rule of law as laid down by this court in the case of Bacon v. State, 22 Fla. 51, and there was no error in giving it.

10. The eighth assignment of error is as follows: "That the court erred in refusing the instructions asked for by the defendant, and in not giving to the jury a definition of reasonable doubt of his own motion." Five of these instructions asserted separate and distinct propositions of law, and under the form of the assignment of error respecting them above quoted we are precluded from examining them further than to see that some one or more were properly refused. Eggart v. State, 40 Fla. 527, 25 South. Rep. 144; McCoggle v. State, 41 Fla. —, 26 South. Rep. 734. The first and second instructions refused are as follows: 1st. "The court is asked to charge the jury that every man is innocent until proven guilty beyond a reasonable doubt by evidence given upon the witness stand; that the presumption is with him when he is arraigned, remains with him through the trial, goes with you into the jury room and remains there until you are satisfied beyond a reasonable doubt that the defendant is guilty as charged in the indictment. By a reasonable doubt is not meant a mere possibility of a doubt, but such a doubt arising from the evidence as leaves your mind in such a condition that after reviewing all the evidence you can not say that you have an abiding conviction to a moral certainty of the guilt of the accused. If you have not that abiding conviction to a moral certainty arising from the evidence or from a lack of evidence as to the guilt of the accused, you must find him not guilty." 2nd. "The court is asked to charge the jury that as none of the counts in the indictment conclude 'contrary to the statute in such case made and provid-

41

ed,' or words to that effect, you can not find the defendant guilty." Even if the defect in the indictment pointed out in this second instruction can properly be made the basis of instructions to the jury, this instruction was properly refused because, as has been already shown, the defect was in view of our statutes immaterial.

The first instruction, read in its entirety, is involved and very confusing and misleading. The last clause was calculated to impress the jury with the idea that the "abiding conviction to a moral certainty" necessary to justify a verdict of guilty, might arise "from a lack of evidence." The reasonable doubt may and frequently does arise from a lack of evidence to prove guilt, but the abiding conviction must arise from the evidence, and not from the lack of evidence. The first instruction was, therefore, properly refused. As to the contention here made that the court should of its own motion have given the jury a definition of reasonable doubt, the rule is well settled in this State that if a party desires to avail himself of the omission of the trial court to charge the jury upon any point of law in the case, he must ask the court to give the instruction desired, and except to its refusal; otherwise he will not be permitted to assign the omission as error. McCoy v. State, 40 Fla. 494, 24 South. Rep. 485. We have seen that the only instruction upon this subject requested by defendant was properly refused, and under the rule stated above we can not reverse the judgment because the trial judge failed to define the term to the jury of his own motion. The court did in fact instruct the jury as to the presumption of innocence, and particularly and repeatedly that they must give the defendant the benefit of every reasonable doubt, and that they must be satisfied of his guilt beyond a reasonable

doubt, and the only complaint made is that he did not attempt a definition of that term. If in any case a judgment can be reversed for failure of the trial judge to give a definition of reasonable doubt when the jury have been properly instructed that they must be satisfied of defendant's guilt beyond a reasonable doubt and give him the benefit of every such doubt, it can only be had in cases where the party presents an instruction containing a correct definition, and excepts to the court's refusal to give it.

We have considered every assignment of error argued in this court, and finding no reversible error, the judgment is affirmed.