FEE & NESBITT, APPELLANTS, VS. FLORIDA SUGAR MANUFACTURING COMPANY, APPELLEE.

1. The rule announced in this court on the subject of demurring to evidence is, that the demurrer admits the truth thereof, and also such conclusions as the jury may fairly and justifiably draw from the evidence; forced or violent inferences are not admitted, but the testimony is to be taken most strongly against the demurrant, and such conclusions as a jury might justifiably draw, the court ought to draw. The rule stated should be qualified by the further statement that it is no part of the object of such a demurrer to bring before the court an investigation of the facts in dispute, or the reconciliation of conflicting testimony, or presumptions arising therefrom.

2. Upon a demurrer to evidence it is the duty of the court to declare the law upon the facts shown in evidence, and in the nature of the case the question of law on the fact can not arise until the fact is ascertained.

3. It is the province of the jury to ascertain the facts under the direction of the judge, and if a party wishes to withdraw from the jury the application of the law to the fact, and all consideration of what the law is upon the fact, he may do so by demurring to the evidence; in which case he must, if the testimony is oral, loose and indeterminate, or circumstantial, state it upon the record as certain and determinate, and admit upon the record every fact and every conclusion which the evidence of his adversary fairly conduces to prove; and unless this is done, the demurrant has no right to call upon his antagonist to join in the demurrer.

4. In case there is a demurrer to evidence that is conflicting, loose and indeterminate, or circumstantial and there is no statement upon the record making it certain and determinate, it will be sufficient reason for the court to refuse to give judgment upon

the demurrer, though there be a joinder therein, and if a judgment should be rendered in such a case, it is liable to be reversed for error.

Appeal from the Circuit Court for Osceola county.

The facts in the case are stated in the opinion of the court.

*W. R. Anno*, for Appellants.

*Louis C. Massey*, for Appellee.

MABRY, C. J.:

Appellants were plaintiffs in the Circuit Court, and appellee was defendant. The suit was instituted in 1891 for drilling an artesian well, 402 feet, at $2.50 per foot, by plaintiffs for defendant, amounting to the sum of $1,005. The account filed with the declaration is credited with $53, leaving a balance of $952. The declaration also contains counts for $952 for work and material provided by plaintiffs for defendant; for money paid by plaintiffs for defendant, and for money found to be due plaintiffs from defendant upon an account stated between them. The plea was the general issue.

After plaintiffs had submitted their evidence to the jury the defendant demurred to the evidence, and the plaintiffs joined therein. The record recites that after the defendant demurred to the evidence, and admitted every fact and conclusion which the evidence offered by plaintiffs tended to prove, the court discharged the jury from further consideration of the issue joined, and they retired and returned into the court with the following verdict: "We, the jury, find for plaintiffs and assess their damages at $990.08. This verdict is conditioned upon the ruling of the court as to the suffi-

ciency of the evidence in favor of plaintiffs." There-
upon the court sustained the demurrer and rendered
judgment for defendant, and plaintiffs excepted.

At the time the demurrer was disposed of there was
no statement or admission entered of record of the facts
established by the evidence, or of the facts which it
tended to prove, but we have in the record an ordinary
bill of exceptions, made up in pursuance of a special
order after the adjournment of the court, of the testi-
mony of the witnesses offered by plaintiffs.

The determination of this case requires a further or
more extended statement of the practice of demurring
to evidence than is found in our former decisions. A
demurrer to evidence was a proceeding well known to
the common law, though it seems that it was not often
resorted to, and was not familiar in practice. In the
last case on this subject, Wilkinson vs. Pensacola &
Atlantic R. R. Co., 35 Fla. 82, 17 South. Rep. 71, after
citing former decisions, it was held that a demurrer to
the evidence admits the truth thereof, and also such
conclusions as the jury may fairly and justifiably draw
therefrom. Forced or violent inferences from the evi-
dence are not thereby admitted, but the testimony is
to be taken most strongly against the demurrant, and
such conclusions as a jury might justifiably draw
therefrom the court ought to draw. The case of Gib-
son vs. Hunter, 2 H. Blackstone, 187, decided in the
House of Lords in 1793, was designed to settle the
practice of demurring to evidence. This case should
be, and has generally been, recognized as declaratory
of the common law rule on the subject. In this case
the Lord Chief Justice, answering for all the judges,
said: "The questions referred by your lordships to
the judges arise upon a proceeding which is called a
demurrer to evidence, and which, though not familiar

in practice, is a proceeding well known to the law. It
is a proceeding by which the judges, whose province it
is to answer to all questions of law, are called upon to
declare what the law is upon the facts shown in evi-
dence, analogous to the demurrer upon the facts al-
leged in pleading. My lords, in the nature of the
thing, the question of law to arise out of the fact can
not arise till the fact is ascertained. It is the province
of a jury to ascertain the facts, under the direction and
assistance of the judge; the process is simple and dis-
tinct, though in our books there is a good deal of con-
fusion with respect to a demurrer upon evidence, and
a bill of exceptions, the distinct lines of which have
not always been kept so much apart as they ought to
have been. * * * But if the party wishes to with-
draw from the jury the application of the law to the
fact, and all consideration of what the law is upon the
fact; he then demurs in law upon the evidence, and the
precise operation of that demurrer is, to take from the
jury and refer to the judge the application of the law
to the fact. In the nature of things, therefore, and
reasoning by anology to other demurrers, and having
regard to the distinct functions of judges and of juries,
and attending to the state of the proceedings in which
the demurrer takes place, the fact is to be first ascer-
tained." Doubts existed for some time as to the kind
of evidence to which a demurrer could properly be di-
rected, but that doubt, as to civil cases, has been re-
moved since the case of Gibson vs. Hunter. When all
the testimony was written, and there was no danger of
a variance in stating it, there was never a doubt; but
in case of parol testimony, and especially where it was
loose and indeterminate, or circumstantial, it was, at
one time, supposed that it could not be demurred to.
If, however, the demurrant is willing to make such tes-

timony certain by stating it in that way upon the record he may do so, and call upon the opposite party to join in the demurrer, which he must do or waive the evidence. It is said, in the case of Fowle vs. Common Council of Alexandria, 11 Wheaton, 320, in speaking of a demurrer to evidence, that "it is no part of the object of such proceedings to bring before the court an investigation of the facts in dispute, or to weigh the force of testimony or the presumptions arising from the evidence." In referring to the case of Gibson vs. Hunter, it was said that "it was there held that no party could insist upon the other party's joining in demurrer, without distinctly admitting upon the record every fact and every conclusion which the evidence given for his adversary conduced to prove. If, therefore, there is parol evidence in the case which is loose and indeterminate, and may be applied with more or less effect to the jury, or evidence of circumstances, which is meant to operate beyond the proof of the existence of those circumstances, and to conduce to the proof of other facts, the party demurring must admit the facts of which the evidence is so loose, indeterminate and circumstantial, before the court can compel the other side to join therein. And if there should be such joinder without such admission, leaving the facts unsettled and indeterminate, it is sufficient reason for refusing judgment upon the demurrer; and the judgment, if any is rendered, is liable to be reversed for error." See, also, Duerhagen vs. United States Insurance Co., 2 Serg. & R. 185; Whiting vs. Johnson, 11 Serg. & R. 328, S. C. 14 Am. Dec. 633; Gould on Pleading, pp. 446 *et seq.;* 7 Bacon's Arb., *title* Pleas and Pleading, pp. 672 *et seq.* Counsel have filed in this court a written consent that the evidence as shown by the bill of exceptions shall be considered

as if it had been attached to the demurrer in the court below, and this evidence consists of the deposition of one witness and the parol testimony of the plaintiffs, set out as detailed by the witnesses. This written con sent, even if we were disposed to consider it at all, does not admit any facts as definately established, but simply submits the evidence in mass to the consideration of the court. We have examined the bill of exceptions, and conclude that the evidence was of such a character as that the·court should have required it to be made certain by a proper statement on the record of the facts established, and those which the testimony tended to prove.

The question in the case hinges upon whether or not the contract to drill the well in question is apportionable, and this is often a close question on a given state of facts. We purposely refrain from expressing an opinion as to the weight of the evidence as an entirety, and refer to only so much as will indicate the view of the court why the trial judge should not have considered it under the demurrer, without an admission upon the record of what were the facts definitely established. No doubt can arise on the evidence that appellants were engaged by appellee to drill an artesian well at $2.50 per foot, and there was a distinct understanding at the time that there was no guaranty of a flow of water. The member of appellants' firm who negotiated with the agents of appellee in reference to sinking the well states that in such negotiation a conversation was had about the capacity of appellants' rig for digging wells, and after digging four hundred and two feet, and when it was suggested that they go eight hundred feet, witness replied that the rig would not go so far. In one connection he states that nothing was said, and no arrangement was made, as to how

far they should go, and on another he says they were to drill until they were told to stop, whether it was fifty feet, or one thousand feet, or until they got water. The other partner, who was personally present on the premises with the agents of appellee where the well was sunk, states that he did not know of his own knowledge what the contract was, but his understanding was that they were to drill into the water-bearing rock, and get all the water there was, at $2.50 per foot, and that they had complied with that condition. From whom, or what source, he derived his understanding is left unexplained. The book-keeper of appellee at the time, and whose deposition was taken, states that he was present when the verbal arrangement to drill the well was made, and appellants declined to guarantee a flow of water. He states the arrangement without any other conditions than that appellants were to drill a four-inch well at $2.50 per foot, and that they were drilling when they left the place. Counsel for appellee contends that we should consider the contract a definite one that the appellants were to drill a well at $2.50 per foot until it reached eight hundred feet, or until they were stopped, and that a failure to go to the depth required prevented them from recovering anything. Eight hundred feet was the depth which appellee finally insisted that appellants should go. On the part of appellants it is insisted that the contract was that they should drill at $2.50 per foot, and nothing was said about how far they should go. Other features of the evidence are referred to in support of this contention. We do not conceive it to be the proper province of the court to deal with loose, interminate or conflicting testimony on a demurrer to evidence, and the parties should be required to make the evidence certain, and put on the record what the

facts are in a proper way before the court should deal with it. The present case, in our opinion, falls within the rule stated, and we will reverse the judgment and direct a *venire de novo*.

The verdict rendered by the jury extended only to the assessment of damages which were to be regarded if the court considered the evidence sufficient to entitle appellants to any recovery. The record as made up shows that the jury was discharged from further consideration of the issue before they rendered the verdict; but as we regard the verdict as only settling the amount of damages which appellants were entitled to, in the event the court held the evidence sufficient to sustain a recovery for anything, no further reference need be made to the verdict.

*Venire de novo* awarded.