LON HOLLAND, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The State's challenge for cause in a capital case is properly sustained where the case depends principally upon circumstantial evidence and the proposed juror on *voir dire* states that no matter how conclusive the evidence might be, if it was in whole or in part circumstantial, he would not convict of a capital offense upon it.

2. In criminal trials after a plea of not guilty it is discretionary with the State Attorney whether he will consent to take the facts from the jury by joining in defendant's demurrer to evidence, and he can not be compelled to join in such demurrer by the court.

3. Where the State Attorney fails to join in defendant's demurrer to evidence, or where the demurrer is general and no testimony is reduced to writing, or where no specific facts are admitted upon the record which loose, indeterminate and circumstantial evidence conduces to prove, the trial court should decline to consider the questions raised by such demurrer; but if the court overrules such demurrer, and then permits defendant to withdraw it and to proceed with the trial as if it had never been interposed, the defendant is not injured and the judgment will not be reversed because the court overruled the demurrer, instead of declining to consider it.

4. Where it is shown that a confession was freely and voluntarily made and that no improper influences were exerted to induce it, the court does not err in admitting such confession in evidence.

5. If, after a confession has been admitted in evidence, it appears by subsequent evidence in the cause that the confession was not free and voluntary, the court should withdraw the evidence of such confession from the jury.

6. What circumstances constitute improper influences such as will exclude confessions are questions of law which may be reviewed by an appellate court, but the credibility of the evidence to prove the circumstances, including conflicting evidence, is a question for the trial court, not reviewable by an appellate court, unless it can see that the trial court clearly erred in its conclusion of facts, or has transcended its discretion and a wrong may have been done thereby.

7. The court must decide in the first instance whether the evidence of the *corpus delicti* is *prima facie* sufficient to authorize the introduction of a confession by the accused in evidence.

8. The *corpus delicti* need not be proven beyond a reasonable doubt as a basis for the introduction of a confession of the accused. If, when the confession is offered, there be already before the jury evidence tending to show that the offense to which the confession relates has been committed, the court should admit the confession, if free and voluntary.

9. The *corpus delicti* of an offense may be proven as well by circumstances as by positive testimony.

10. An appellate court can not review any determination of questions of fact passed upon by either judge or jury, unless all material evidence which was before the judge or the jury is brought before the appellate court.

11. While trial courts should not permit the introduction of evidence of a defendant's confession until sufficient proof of the *corpus delicti* is first given, yet if the confession be admitted without such proof, and subsequently additional evidence (independent of the confession) of the *corpus delicti* sufficient to justify the admission of confessions is introduced, the error in prematurely admitting the confession will be cured.

12. It is not error to refuse to instruct the jury that before they can consider any alleged confessions of defendant they must be satisfied beyond a reasonable doubt, from other evidence in the case, of the existence of the *corpus delicti*. The confessions of a defendant when admitted are to be weighed and considered by the jury with all the other evidence, positive and circumstantial; and if upon the whole evidence the jury are satisfied beyond a reasonable doubt, both as to the *corpus delicti* and the identity of the defendant as the guilty perpetrator, it becomes their duty to find him guilty.

13. The court determines the admissibility, and the jury the credi-

bility, of confessions. It is not error, therefore, for the court to refuse to charge the jury that if they believe from all the evidence that defendant's confession was procured from fear or terror, or hope of reward, they should disregard the confession in making up their verdict.

14. Assignments of error not argued are considered abandoned.

Writ of Error to the Circuit Court for Polk county.

The facts in the case are stated in the opinion of the court.

*W. R. Anno*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

CARTER, J.:

Plaintiff in error was indicted at the spring term, 1896, Circuit Court of Polk county, for the murder of Joel W. Walker, and tried and convicted with recommendation of mercy, with sentence to life imprisonment, at the fall term, 1896, from which sentence this writ of error was sued out.

I. The court below sustained the State's challenges for cause to four jurors who each answered on *voir dire* that no matter how conclusive the evidence might be, if it was in whole or in part circumstantial, they would not convict of a capital offense upon it. The case depending principally upon circumstantial evidence, there was no error in these rulings. Olive vs. State, 34 Fla. 203, 15 South. Rep. 925.

II. After the State rested its case and before offering any evidence the defendant, according to the statement in the bill of exceptions, "files a demurrer, which demurrer the court overrules, to which ruling

of the court defendant by counsel excepts; whereupon counsel for the defense withdraws said demurrer." This statement no doubt refers to a demurrer to evidence copied in the bill of exceptions by which the defendant demurred "to the evidence of the State, the State having rested its case, the evidence taken by the State being admitted by the defendant as being true for the sake of this demurrer," upon the grounds, first, that the State had not proved the *corpus delicti;* second, that the presumption of defendant's innocence had not been overcome. The bill of exceptions further states that the demurrer coming on to be heard, defendant being present, and the court having heard the argument of defendant's counsel and duly considered same, overruled the demurrer, and thereupon defendant withdrew the demurrer and introduced evidence in his behalf. It nowhere appears that the State Attorney joined in the demurrer, or that he argued same to the court. The State's testimony was largely circumstantial, and the entire testimony was in parol. No part of the testimony was ever reduced to writing until long after the trial of the case, nor until the bill of exceptions was made up and filed. This court has often passed upon questions involved in demurrers to evidence in civil causes, and it has been uniformly held that where the evidence is loose and indeterminate, or when it is *circumstantia l*, the opposite party can not be compelled to join in a demurrer to evidence, unless the demurring party expressly admits on the record every fact that the loose and intermediate and circumstantial evidence conduces to prove, thereby relieving the court from the task of weighing doubtful and uncertain evidence. Without an express admission of this nature, the other party is not bound to join, and

if he does, the court can pronounce no judgment on the demurrer. Higgs vs. Shehee, 4 Fla. 382; Morrison vs. McKinnon, 12 Fla. 552; Hinote vs. Simpson & Co. 17 Fla. 444; Wilkinson vs. Pensacola & Atlantic Railroad Co., 35 Fla. 82, 17 South. Rep. 71; Fee & Nesbitt vs. Florida Sugar Manufacturing Co., 36 Fla. 612, 18 South. Rep. 853. In this case the demurrer was general; nothing was reduced to writing; no specific facts were admitted upon the record, and there was no joinder in demurrer; consequently the court should have declined to consider the questions proposed to be raised by it. Hinote vs. Simpson & Co., 17 Fla. 444; Duncan vs. State, 29 Fla. 439, 10 South. Rep. 815. In the latter case, which seems to be the only criminal case in which a demurrer to evidence was ever passed upon by this court, it was distinctly ruled that where defendant upon arraignment has put himself upon the country by a plea of not guilty it is discretionary with the State Attorney whether he will consent to take the facts from the jury by joining in defendant's demurrer to evidence, and that the court can not compel the State's counsel to join in such demurrer. Where there is no voluntary joinder in demurrer to evidence in such cases the court should strike it, or disregard it by refusing to entertain it, and submit the facts in regular order to the jury. In this case the court overruled the demurrer, and thereupon it was withdrawn and defendant permitted to introduce evidence. Under these circumstances we discover no injury resulting to defendant by the action of the court overruling a demurrer which it never should have considered at all.

III. It is insisted that the court erred in admitting in evidence an alleged confession made by defendant

to one H. H. Fertic shortly after his arrest for the crime of which he stands convicted. It was shown before the confession was admitted that it was freely and voluntarily made, and that no improper influences were exerted to induce the confession. Consequently the court did not err in admitting it. Metzger vs. State, 18 Fla. 481; Dixon vs. State, 13 Fla. 636; Coffee vs. State, 25 Fla. 501, 6 South. Rep. 493; Murray vs. State, 25 Fla. 528, 6 South. Rep. 498; Leslie vs. State, 35 Fla. 184, 17 South. Rep. 559; Spicer vs. State, 69 Ala. 159; Jackson & Dean vs. State, 69 Ala. 249.

IV. After this confession was admitted in evidence the defendant introduced testimony tending to contradict the evidence of the State that the confession was voluntarily made, and it is insisted that after hearing this evidence the court should, of its own motion, have withdrawn the confession from the consideration of the jury. It is the duty of the court, without the assistance of the jury, to determine as to the admissibility of confessions in evidence, and the duty of the jury to determine the credibility and weight of the confessions when admitted. In considering whether the confessions are admissible the court determines whether they were free and voluntary and uninfluenced by fear, duress, promises or other illegal considerations; and the court may hear all the evidence tending to show that they were or were not voluntarily made; and if it clearly appears therefrom that the confessions were voluntary it should admit them. And if, after a confession has been introduced in evidence, it appears by subsequent evidence in the cause that such confession was not free and voluntary, the court should then arrest the examination and withdraw the evidence of such confession from the jury.

Simon vs. State, 5 Fla. 285; Dixon vs. State, 13 Fla. 636; Metzger vs. State, 18 Fla. 481. In considering whether the confession is voluntary the trial judge must, of course, determine the facts even upon conflicting evidence, and when we are called upon to review his ruling upon such evidence we must accord to his finding the presumption that it is correct. What circumstances constitute improper influences such as will exclude confessions are questions of law which may be reviewed by an appellate court, but the credibility of the evidence to prove the circumstances, as, well as the credibility of conflicting evidence, are questions for the trial court, not reviewable by us, unless the court below has clearly erred in its conclusion of facts; or, as expressed by this court in Coffee vs. State, 25 Fla. 501, text 514, 6 South. Rep. 493, unless the court below "has transcended its discretion and a wrong may have been done thereby." Thompson on Trials, sec. 328; State vs. Burgwyn, 87 N. C. 572; State vs. Vann, 82 N. C. 631; State vs. Andrew, Phil. (62 N. C.) 205; State vs. Holden, 42 Minn. 350, 44 N. W. Rep. 123. The confessions were testified to by H. H. Fertic, who stated that defendant was arrested by him and a deputy sheriff and other members of a sheriff's posse, armed with guns at the time of the arrest; that three brothers of the deceased were present with guns; that about half an hour after the arrest defendant requested the deputy to place him in charge of witness, as witness was his friend, which was done, and at witness' suggestion the defendant and witness walked off from the crowd fifty or seventy-five yards; and defendant without any suggestion from witness began a conversation about the deceased, and made the alleged confession; and that no inducements were

held out, nor duress used, to procure such confession, and that he cautioned defendant that what he said would be testified to by witness in court. Defendant, as a witness, admitted the conversation with Fertic, but said the confession was induced by fright; that "Fertic came down there in such a way and offered inducements to me; told me he would let me go or something like that if —; first asked me where Mr. Bird was." This was all of the defendant's testimony upon the subject of the confession, except to deny its truth and to deny making certain statements in the confession as testified to by Fertic. Robert McKinney, for defendant, testified that he was near the crowd when defendant was arrested; that there was considerable confusion and pretty loud and rough talking out there; witness saw "these gentlemen punching at this man, when they arrested him, with their guns, and knocking at him," and one of the Walkers applied a vile epithet to witness, and told him to go back to his house; that Fertic and defendant were standing up talking together, but witness did not understand what they said; that this talking occurred three or four minutes after the punching with the guns; that witness then went home and saw no more of the party until they left, a half hour or an hour after that. There were several contradictions in this witness' testimony. He stated there was no effort made to shoot defendant; that the only punching at him was by two of the deceased's brothers, and that after this was all over defendant and Fertic went off from the crowd thirty or forty feet. W. H. Pearce, for defendant, testified that when defendant was first arrested there was considerable disturbance, good deal of vile language, though witness could not understand

what was said; witness could see men with guns there; seemed to be quite a stir and excitement; after a little everything settled down, and some of the boys came back to the house. Defendant was arrested about one hundred and fifty yards or more from this house. H. D. Ballard, for the defense, related a conversation had by him with Fertic the next day after the arrest in regard to the arrest and the confession, contradicting the testimony of Fertic, that he had no such conversation. The court below reconciling this testimony as far as possible, and exercising its power to reject such as it believed not to be credible, found that the testimony of the witness Fertic was true in substance, and did not withdraw the confession from the jury, and we see nothing in the circumstances to justify us in reversing his conclusion of the facts. If the testimony of Fertic was true the confession was clearly voluntarily made and admissible in evidence.

V. It is claimed that the court erred in admitting the alleged confession of defendant before the *corpus delicti* had been established. In Lambright and Stevens vs. State, 34 Fla. 564, 16 South. Rep. 582, the rule is stated to be that the court must decide in the first instance whether the evidence of the *corpus delicti* is *prima facie* sufficient to permit confessions of the accused to go to the jury; that it is a fundamental rule of ancient origin that no person shall be convicted or involved in the consequences of guilt on extra judicial confessions without proof *aliunde* of the *corpus delicti*, and before such confession should be allowed to go to the jury there should be proof before the court *tending to show* that the offense to which the confession relates has been committed. In Winslow vs. State, 76 Ala. 42, the court say: "It is the

province of the judge to determine whether there is testimony sufficient to make it appear *prima facie* that a crime has been committed. The evidence on which the judge acts may not necessarily establish the *corpus delicti.* It may be, and often is, conflicting and contradictory. In such cases the credibility of the witnesses and the sufficiency of the entire evidence are for the ultimate decision of the jury. In arson the *corpus delicti* consists, not alone of a building burned, but also of its having been willfully fired by some responsible person. Burning by accidental and natural causes must be satisfactorily excluded, to constitute sufficient proof of a crime committed. *This decree of proof*, though requisite to a conviction, is not, however, antecedent and necessary to the admissibility of confessions." The contention of the plaintiff in error, that the court should not admit confessions until other evidence has been introduced sufficient to prove the *corpus delicti* beyond a reasonable doubt, can not be sustained. It was proven that the deceased was last seen in life by Jim Glover and J. T. Wear, on November 9, 1895; and at that time he was with the defendant two and one-half miles from Crooked Lake, on the road leading to Tiger creek. On the same day the defendant was seen at the mouth of Tiger creek, near Lake Walkingwater, shortly after 12 o'clock, by Robert and Doc McKinney, who were preparing dinner when defendant came up. He was invited to remain to dinner, but said he had not time to tarry then, that he would go on over, and come back bye and bye to dinner. Defendant did not return for quite awhile. During his absence a gun was fired, and just as McKinney had saddled his horse to go, defendant came up, and said he had been down on

his hammock field to see if he could kill a turkey. Defendant had formerly lived at the mouth of Tiger creek, but had removed from there a month or more previous to this time. McKinney asked defendant to go home with him, and defendant said he would if McKinney would let him put an old mare he had on the marsh, nine miles from where McKinney lived, and defendant thereupon went home with McKinney, and at his instance McKinney's son put the mare on the marsh, and this mare was proven to be the property of the deceased. Besides this mare, defendant also had a horse and two bridles and saddles with him that day. Defendant was wearing a pair of shoes, and just before leaving he requested Doc McKinney to go down to the hammock field and get another pair off the fence which defendant claimed and which Doc McKinney found on the fence as directed. Defendant had a gun with him, and kept it until arrested, which was proven to be the property of the deceased. Before defendant returned to dinner, Doc McKinney went across the creek to the house in which defendant had formerly lived, and found there the horse and mare, bridles and saddles, and the pair of pants which defendant was wearing when he first came up that day. Doc McKinney while across the creek heard something like the report of a gun. Defendant went home with McKinney and remained there until arrested, except that he would frequently go off and remain a day or two at a time. L. M. Cody and B. E. Bushnell were camping near the mouth of Tiger creek on December 26, 1895, and Cody, in searching for wild orange trees in the swamp about one-half or three quarters of a mile from the house in which defendant formerly lived, found the skeleton of a white man in a sort of sag hole, with

small portions of the skin and flesh intact on the hand and foot. Nearly all the clothes were on the skeleton except shoes; and the pants were rolled up to the knees and the shirt open in front. Cody took a belt off the skeleton and carried it to camp with him, and when he reached there found the defendant and one Dan Bird, defendant just having arrived. Cody exhibited the belt, and Bird looking at defendant said "that is hard on you;" when this remark was made defendant had changed countenance. Cody related the circumstances of finding the body, the defendant washed off the belt and hung it up to dry, and all four of these parties thereupon went out to see the body, and when they got there defendant stood around and looked on in an uneasy frame of mind, and said it was the body of a colored man. The parties all went back to camp, and Bird and defendant left immediately to go to Robert McKinney's, three miles away, saying they were in a hurry. The coroner went out to view the remains on December 28, and it was found that the bones of the skeleton were much scattered, and the pants and other articles of clothing had disappeared. The shirt however was there and it was identified as the property of the deceased. The shirt, and the skull, and jaw of the skeleton, were introduced in evidence, but whether they bore marks of violence is not stated in the bill of exceptions, except that there were "two holes" in the shirt. When Bird and defendant left the camp of Cody and Bushnell on the way to Robert McKinney's, they went together for about two hundred yards, when defendant said he believed he would go down to Lake Walkingwater (into which Tiger creek seems to have emptied) and take the beach of the lake down, that it was nearer, and

Bird kept straight on, reaching McKinney's two hours ahead of defendant. Bird asked defendant why he was so late, defendant said he heard some one shooting across the hill, thought perhaps it was Bird and that he went over there to help Bird carry his game home. When Cody and Bushnell started home, very soon after Bird and defendant left, they put the belt in their vehicle, securing it in such a manner as not to lose it, and drove up to the house in which defendant had formerly lived, tied the horse securely to the house and went down in the swamp to look for wild orange trees. When they returned a short time afterwards the horse and vehicle were gone, and was found a half mile away. The reins had been untied, not broken, and the buggy had been backed and cut around so as to permit the wheel to pass the corner of the house. When they got home the belt was gone, but everything else in the buggy was intact. On November 11, 1895, defendant pawned or sold to one Watson Rawlinson a watch and chain, and the chain was identified as the property of the deceased. Hamp Walker, a brother of deceased, last saw him sometime about November 1, 1895, and had not seen or heard of him (except through defendant) since that time. Deceased was in good health, and this witness gave him the shirt offered in evidence just a few days previous to his disappearance. Mathew Walker, another brother, last saw deceased the latter part of October, 1895; heard of him through Wear and Glover about November 9, 1895, and from defendant only since that time, and the deceased was wearing the watch chain referred to the last time witness saw him. These facts were all proven by evidence other than defendant's confession, and it was further shown that when defendant

was arrested in January, 1896, he was trying to es-
cape, and that he did subsequently escape by jumping
from the window of a car running at the rate of twelve
or fifteen miles an hour.   This was in April, 1896, and
defendant was handcuffed at the time.   The skull and
shirt not being before us, we can not say they did not
bear evidence of violence to deceased, and in such a
manner as to exclude the idea that deceased came to
his death by accident, or suicide, or means other than
criminal.   We said in Marshall vs. State, 32 Fla. 462,
14 South. Rep. 92, that this court will refuse to enter
upon a consideration of the question, whether the ver-
dict is contrary to the evidence, unless all the evidence
that was before the trial court is presented to this
court.   This remark is equally applicable to questions
like those now under consideration.   The *corpus de-
licti* of an offense may be proved as well by circum-
stances as by positive testimony.   Anderson vs. State,
24 Fla. 139, 3 South. Rep. 884.   We are unable to say
that the evidence was insufficient to permit the intro-
duction of the confession.   Winslow vs. State, 76 Ala.
42; Gray vs. Commonwealth, 101 P. St. 380, S. C. 47
Am. Rep. 733; People vs. Palmer, 109 N. Y. 110, S.
C. 4 Am. St. Rep. 423; Ryan vs. State, 100 Ala. 94, 14
South. Rep. 868; Lancaster vs. State, 91 Tenn. 267, 18
South. W. Rep. 777.   It appears that a part of the
evidence bearing upon the *corpus delicti* was admitted
after the confession was introduced.   If it be conceded
that the evidence of *corpus delicti* was insufficient at
the time the confession was admitted, the error in ad-
mitting it was cured by the subsequent introduction
of sufficient additional evidence to justify its admis-
sion.   Floyd vs. State, 82 Ala. 16, 2 South. Rep. 683.

VI. The court charged the jury that "two things

must be proved to establish the *corpus delicti:* First, that a crime has been committed; and, second, that the defendant committed it. The *corpus delicti* can be established by circumstantial evidence, provided it is sufficient to convince the jury to the exclusion of every reasonable doubt, but it can not be proved by the confession standing alone; but if the confession, taken in connection with all the circumstances in the case, convince you to the exclusion of every reasonable doubt that Joel W. Walker is dead; that he died by criminal violence; that the defendant unlawfully killed him from a premeditated design to effect the said Joel W. Walker's death; that it was done in said county of Polk before the finding of the indictment herein, then it would be your duty to find the defendant guilty of murder in the first degree, as charged in the indictment in this case.'' It is insisted that this instruction was erroneous ''in that it charged that the alleged confession of the defendant may be considered in connection with the other evidence in proving the *corpus delicti* of the offense.'' The rule requiring proof of the *corpus delicti* other than the confessions of the defendant, in order to justify a conviction, is not founded upon the idea that confessions are *inadmissible* to prove this material fact; but upon the theory, justified by judicial experience, that confessions alone are insufficient evidence upon which to base a conviction. The rule is confined to the weight, not to the competency of evidence in the form of confessions. It never was intended to exclude confessions from the consideration of the jury, but only to require the confessions to be corroborated by other evidence of those matters constituting the *corpus delicti.* When, therefore, the *corpus delicti* has been *prima facie* proven

by positive or circumstantial evidence, the confessions of defendant are admissible, and all the facts and circumstances, including the confessions, may then be weighed and considered together; and if upon the whole evidence, the jury are satisfied beyond a reasonable doubt both as to the *corpus delicti* and the identity of the defendant as the guilty perpetrator, it becomes their duty to find the defendant guilty.   Ryan vs. State, 100 Ala. 94, 14 South. Rep. 868; 1 Bishop's Criminal Procedure, secs. 1058, 1059; People vs. Badgley, 16 Wend. 52; State vs. Patterson, 73 Mo. 695.

VII.  The first instruction requested by the defendant and refused by the court among other things told the jury, that it was the duty of the State to prove beyond a reasonable doubt that Joel W. Walker met his death by criminal violence at the hands of defendant and that in considering whether or not Walker did meet his death by criminal violence the jury should not consider any alleged confession of the defendant. The first and second additional instructions requested by the defendant and refused by the court informed the jury, that the *corpus delicti* in this case consists of the dead body of Joel W. Walker and that he met his death by criminal violence and that before the jury could consider any alleged confession of defendant, they should be satisfied beyond a reasonable doubt that the *corpus delicti* as thus defined had been proven by competent evidence in the case.   As these instructions were in direct conflict with the charge given by the court which we have pronounced correct in the respects considered, there was no error in refusing to give them.

VIII.  The defendant requested the court to charge

13

the jury that "If the jury believe from all the evidence that the confession of the defendant was procured from fear or terror or hope of reward then you will not consider such confession in the making up of your verdict." There was no error in refusing the instruction, because it is the duty of the court to determine whether the confession was voluntary and it can not shift this responsibility upon the jury. Simon vs. State, 5 Fla. 285; Murray vs. State, 25 Fla. 528, 6 South. Rep. 498; McGuff vs. State, 88 Ala. 147, 7 South. Rep. 35; Redd vs. State, 69 Ala. 255; Thompson on Trials, secs. 1024, 328.

This disposes of all assignments of error except the tenth, which, not being mentioned in the brief of plaintiff in error, is considered abandoned. Lambright and Stevens, vs. State, 34 Fla. 564, 16 South. Rep. 582.

Judgment affirmed.