WALTON LAND & TIMBER COMPANY, *Plaintiff in Error,*
v. LOUISVILLE & NASHVILLE RAILROAD COMPANY,
*Defendant in Error.*

## Opinion Filed July 7, 1916.

1. It is the duty of a common carrier of live stock to provide proper facilities for the loading, transportation and delivery of the live stock which it undertakes to carry, and during the transportation of the stock to take such precautions as reasonable prudence suggests to insure a safe delivery.

2. The duties and responsibilities of a common carrier of live stock may be modified by contract between the carrier and shipper of the stock, and where the carrier relies upon such a contract to relieve it of its common law liability in an action against it for damages resulting from its failure to transport the stock safely, it must plead and prove such contract.

3. In the absence of a contract limiting the liability of a common carrier of live stock, its liability is that of an insurer against such loss or damage as does not arise from the Act of God, the public enemy, and those arising from the nature and propensities of the animals received for transportation against which due care could not provide.

4. In an action upon the case for damages against a railroad company for negligently injuring the plaintiff's live stock during transportation, a prima facie case is made for the plaintiff when he shows the delivery of the stock to the railroad in good condition, delivery by the railroad company at the point of destination in bad condition, and that neither the shipper nor his agent accompanied the stock in charge of the same during their transportation. In such case the burden is upon the railroad company to show that the loss or injury to the live stock did not result from negligence on the part of the railroad company, or that the cause of the loss or injury was within one of the excusatory exceptions recognized by law or provided for by the terms of the contract.

VOL. 72, JUNE TERM, 1916.    67

Walton Land & Timber Co. v. L. & N. R. R. Co.—Opinion of Court.

5. In an action against a railroad company for damages resulting from the negligent handling by the railroad company of live stock during transportation, it is proper for the plaintiff to show the bruised and scratched condition of the stock as tending to show rough handling by the defendant carrier.

6. A demurrer to evidence admts the truth of all the testimony and all reasonable deductions that can be made therefrom, and it should set forth all the evidence intended to be admitted thereby. The object of such a demurrer being to refer to the court the law arising from admitted facts.

Writ of Error to Circuit Court, Walton County; D. J. Jones, Judge.

Judgment reversed.

*S. K. Gillis,* for Plaintiff in Error;

*Daniel Campbell and Blount & Blount & Carter,* for Defendant in Error.

ELLIS, J.—The plaintiff in error brought suit in Circuit Court for Walton County against the defendant in error to recover damages for the loss of a mule by death, which was shipped by the plaintiff in a car loaded with other live stock over the defendant's railroad from Horse Cave, Kentucky, to DeFuniak Springs, Florida.

The amended declaration, which was filed in May, 1913, alleged that the defendant was a common carrier of live stock by rail and that it undertook as a common carrier for a valuable consideration paid by the plaintiff to the defendant to transport from Horse Cave, Kentucky, to DeFuniak Springs, Florida, by rail, eighteen mules and five horses for the plaintiff; that the live stock was received by the defendant in good condition, and the de-

fendant agreed to safely transport the same from Horse Cave, Kentucky, to DeFuniak Springs, Florida, and to deliver the same to the plaintiff at DeFuniak Springs, Florida, in good condition, and "That the defendant did not deliver all of the said mules in good condition at De-Funiak Springs, Florida, as it had agreed to do, but by its negligence in transporting the said stock so scarred, bruised, wounded and injured one of the said mules that it died from the effects of said wounds, scars, bruises and injuries soon after it was taken from the cars of defendant at DeFuniak Springs, Florida."

The declaration alleged that the defendant was notified in writing of the claim, but had refused to pay, and the plaintiff demanded damages in a sum equal to the value of the mule and expenses of transportation and interest from the date of shipment, and fifty per cent per annum upon the principal sum, and fifteen per cent of the amount recovered as attorneys' fees.

The defendant pleaded that it was not guilty; that the injury complained of was caused solely by the nature, disposition and inherent viciousness of the stock shipped in the car with the mule; that the damage was caused by the negligence of the plaintiff, and that the injury complained of was contributed to by the negligence of the plaintiff. And an additional plea was filed that the defendant never undertook and promised as alleged in the declaration.

On the 4th day of June, 1913, the defendant filed by leave of the court an additional plea to the declaration, which was as follows: "That the plaintiff, through its duly authorized agent, Henry Altshelter, entered into a written agreement, for a valuable consideration, with the defendant, through its duly authorized agent, J. E. Longsdon, whereby the plaintiff and the defendant agreed that should damage for which the said carrier

may be liable occur, the value at the place and date of shipment should govern the settlement, in which the amount claimed shall not exceed for a stallion or jack $150.00; for a horse or mule $100.00; mare and colt together $100.00; yearling colt $50.00; cow and calf together $35.00; domestic horned animals $30.00 each; yearling cattle, each $15.00; calves, hogs, sheep, or goats, $5.00 each; chickens, ducks and guinea fowls $2.50 per dozen, and turkeys $5.00 per dozen; which amounts it is agreed are as much as such animals as are herein agreed to be transported are reasonably worth."

To this plea the plaintiff interposed a demurrer, but the record does not disclose whether this demurrer was sustained or overruled.

On the 14th day of January, 1914, the case came on for trial. A jury was empaneled and sworn, and when the plaintiff had submitted its evidence the defendant announced that it would demur to the plaintiff's evidence. The demurrer was filed. The plaintiff joined in the demurrer, which was sustained by the court. Thereupon the plaintiff's attorney "moved the court that he would take a non-suit," which motion was granted and the jury ordered discharged.

About a year and a half afterwards, on July 9, 1915, the defendant moved the court for a judgment *nunc pro tunc* on the order sustaining the demurrer to the evidence and upon the same day the court rendered the following judgment:

"This cause coming on to be heard upon the application of defendant's attorneys for a final judgment *nunc pro tunc* upon the order sustaining the demurrer to the evidence in this suit, due notice of the hearing having been given to the attorney for the plaintiff, upon considering

the record and the argument of counsel for the respective parties:

"It is considered and adjudged by the court that the plaintiff recover nothing in said suit, and that the defendant go without day and recover its costs, amounting to $____, and have execution therefor.

"Done and ordered at Chipley, Fla. this 8th day of July, A. D. 1915, because of the disqualification of the Hon. A. G. Campbell, Judge of the First Judicial Circuit. To which ruling of the court plaintiff excepts & exception noted & plaintiff given 60 days to present bill of exception.

　　　　　　　　　　　　" D. J. JONES,
　　　　　　"Judge of the Ninth Judicial Circuit
　　　　　　　　of the State of Florida."

This judgment was duly entered.

At the trial E. W. Thorpe, the president of the plaintiff company, testified that he bought the mule in Kentucky and shipped him to Horse Cave in that State, where he was put in a car of the defendant company on its tracks, which car was at the same time loaded with other stock purchased by Mr. Thorpe for his company. The witness testified that he could not say whether the agents of the railroad company were looking after the loading of the car, but there were a number of people assisting in loading and shutting the car, that the car was loaded with five horses and eighteen or twenty mules and started from Horse Cave, Kentucky, to DeFuniak Springs, Florida. Witness said he did not agree or have any contract with the Louisville & Nashville Railroad Company in regard to the shipment of that car of stock; that he did not contract with the company or any of its agents as to the value of the stock, nor did he authorize any one else to do so; the car was loaded on February 7th, 1911; that the last

time he saw the stock at Horse Cave, Kentucky, they were in the car; about four days afterward he saw the stock in the car at the stock pen in DeFuniak Springs. Thereupon counsel for plaintiff asked the witness the following question: "Q. What was the condition of the horses and mules when they reached here?" The defendant's counsel objected to the question so far as it related to any of the horses or mules other than the one for whose loss damage was asked. Plaintiff's counsel said it would be proper to show the condition of the other stock as tending to show how the car was handled by the defendant company, he offered to show that the other horses and mules in the car were more or less bruised and scratched, "hair rubbed off and skin rubbed raw." The objection was sustained and the plaintiff excepted. The witness testified as to the value of the injured mule, that his qualities were "good and gentle;" that he was well broken, the other stock in the car were "well broken" and were well bred stock; that when the car was opened at DeFuniak Springs the particular mule was on his feet, but was breathing as if he was in pain. "Frothy, bloody stuff" came from his mouth, there was a wound on the "inside of the right hind hip, the flesh and hide were torn;" that the wound was twelve or fifteen inches long and four or five inches wide; that the mule would move only a few inches at a time, "you could hardly get him to step;" the indications were "he was suffering pain."

T. M. McConnell testified for the plaintiff as to the value of the mule, as to its condition upon its arrival at DeFuniak Springs, and as to its death the same night. B. C. Davis also testified as to the mule's condition upon its arrival at DeFuniak Springs, and as to the market value of the mule if he had been in good condition. The plaintiff's counsel then read in evidence the deposition of

W. K. Kenan who testified that he had been in the stock
business for over twenty years; that he had had "consid-
erable experience with reference to loading horses and
mules in cars to be shipped by car load lots;" that in Feb-
ruary, 1911, he went to Kentucky for the plaintiff to pur-
chase a car load of horses and mules; that he purchased
enough stock to load a car and loaded the stock with great
care and saw the car closed; that the car was properly
bedded for the shipment of mules and horses; the stock
was properly loaded and not crowded; that the mule for
whose loss the plaintiff sued was in the lot; that he
weighed something over 1,100 pounds, had good shape,
was well built and sound, that the mule was well broken
and gentle, was not wild, vicious and unruly, nor were
any of the horses or mules shipped in that car of such
character and disposition, but on the other hand "the en-
tire load was well bred, well broken and gentle stock;"
that the mule was large and strong; that all the mules in
the car were large and strong, and the injured mule was in
good shape and condition when he was loaded on the car
at Horse Cave, Kentucky, and delivered to the Louisville
& Nashville Railroad Company; that he next saw the
mule in the car of the defendant company at DeFuniak
Springs. The witness testified as to the mule's condition,
described the wound upon the inside of the right thigh
and said there were other wounds or bruises under a fore-
leg and about the head, and that there were signs of inter-
nal injury. This witness testified that in his judgment the
injuries to the mule were "caused from his being down in
the car and trampled upon by the other stock." The wit-
ness also said: "I will state that I don't think that a mule
of this character could have been thrown from his feet
and have gotten down in the car unless it was done by
extraordinary rough handling of the car. I base this

judgment on the character of the mule described and of the other stock in the car and the way and the manner in which they were loaded."

The bill of exceptions contains a recital of what then transpired. In substance it is as follows: The plaintiff announced that it rested its case, whereupon the defendant interposed its demurrer to the evidence and the plaintiff joined in the demurrer. After argument of counsel the "court announced that he thought the demurrer to the evidence would have to be sustained and asked the attorney for the plaintiff whether he desired a final judgment entered upon the demurrer or would he take a non suit." The plaintiff's attorney obtained leave of absence for a few minutes to examine authorities and decide what answer to make to the court's inquiry. When the plaintiff's attorney returned he announced to the court that he would take a non suit, to which announcement the court replied that he had a right to do so, "ordered a non suit to be entered and discharged the jury from any further consideration of the case."

The bill of exceptions shows that on the 25th day of June, 1915, the defendant moved the court for a final judgment upon the demurrer to the evidence, which motion was opposed by the plaintiff's counsel upon the ground that the court had given the plaintiff a right to take a non suit; that the right was secured by law and that the record showed that the proper final judgment to be entered was upon the plaintiff's non suit. This motion came on to be heard on July 8, 1915, before the Honorable D. J. Jones, Judge of the Ninth Circuit, because of the disqualification of the Judge of the First Circuit, and resulted in the judgment hereinbefore copied in this opinion.

In support of the opposition to the motion of the defendant the plaintiff's counsel read the affidavit of Mr. D.

Stuart Gillis as to what transpired in the court room between the Judge and plaintiff's counsel on July 14, 1914, when the court had under consideration the defendant's demurrer to the evidence.

The record also contains an affidavit of Hon. Daniel Campbell, who was one of the defendant's counsel when the suit was instituted, whose copartner, Hon. A. G. Campbell, became Judge of the First Circuit, and on account of whose disqualification the defendant's motion for a final judgment was heard before Hon. D. J. Jones, Judge of the Ninth Circuit. This affidavit is not included in the bill of exceptions. The affidavit recites Daniel Campbell's recollection of the transaction which occurred upon the argument on the demurrer to the evidence. The affidavit recites in substance that when the argument had closed the "Judge after a brief statement of the evidence, or rather a review of the evidence, announced that he sustained the demurrer and the plaintiff's attorney stated that he would take a non suit. Nothing was said by the Judge as to Pltff's Atty doing either until Judge Wolfe said demurrer would be sustained." We think this affidavit is not part of the record proper, and if it was used when the motion for the final judgment was heard should have been included in the bill of exceptions. The affidavit, however, seems not to be inconsistent with the recital in the bill of exceptions to the effect that the court announced that he thought the demurrer would have to be sustained, whereupon plaintiff took a non-suit.

To the final judgment entered in July, 1915, the plaintiff took a writ of error, and assigns six errors.

The sixth assignment of error attacks the ruling of the court on the motion of the defendant for a final judgment. The plaintiff contends that he had taken a nonsuit, that the law allowed him to do so at that stage of the proceedings. The defendant contends that after the de-

VOL. 72, JUNE TERM, 1916.        75

Walton Land & Timber Co. v. L. & N. R. R. Co.—Opinion of Court.

fendant tendered a demurrer to the evidence which was joined in by the plaintiff, and the court had considered the same in connection with the evidence, it was too late for the plaintiff to take a non-suit. In other words, at that stage of the proceedings the plaintiff's right to take a non-suit had expired.

If the court was correct in sustaining the demurrer to the evidence the point will have to be decided; but if on the other hand the court erred in sustaining the demurrer to the evidence, it becomes immaterial whether the plaintiff took a non-suit or forfeited his right by too long delay.

The question of the sufficiency of the evidence to establish a prima facie case for the plaintiff is presented by the third and fifth assignments of error, which are that the court erred in forcing the plaintiff to take a non-suit by announcing that the demurrer to the evidence would have to be sustained, and that the court erred in entering the final judgment. The fourth assignment of error presents substantially the same question as the sixth assignment. The second assignment of error which is that the court erred in overruling the plaintiff's demurrer to the "additional plea to the amended declaration," must fail because the record as pointed out above shows no such order.

We will consider the third and fifth assignments first. The declaration was one in case for the tortious act of the defendant in negligently injuring the plaintiff's mule while transporting it from one point to another. It was alleged that the defendant as a common carrier of live stock undertook this service for a valuable consideration, but that by its negligence in transporting the mule it was bruised and injured so that it died and was a total loss to the plaintiff. To this declaration the defendant pleaded

not guilty. The other pleas referred to herein were affirmative defenses.

In the case of Summerlin v. Seaboard Air Line Ry., 56 Fla. 687, 47 South. Rep. 557, the court speaking through Mr. Justice PARKHILL said: "Whenever a railroad company therefore receives cattle or live stock and undertakes to transport the same for hire, such company assumes the relation of a common carrier and becomes chargeable with the duties and obligations which are incident to that relation, except so far as such duties and responsibilities may legally be modified by special contract."

A common carrier of live stock has at common law the duty of furnishing proper facilities for the loading, transportation and delivery of the live stock which it undertakes to carry. Not only must suitable means be provided by the carrier for the loading and unloading of live stock, but it must during the transportation of the stock take such other precautions as reasonable prudence suggests to insure a safe delivery. See 5 Am. & Eng. Ency. of Law (2nd ed.) Title "Carriers of Live Stock;" Atlantic Coast Line R. Co. v. Dexter, 50 Fla. 180, 39 South. Rep. 634; Savannah, F. & W Ry. Co. v. Harris, 26 Fla. 148, 7 South. Rep. 544; 4 R. C. L. pp. 949, 969, 972; Atlantic Coast Line R. Co. v. Rice, 169 Ala. 265, 52 South. Rep. 918; Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 South. Rep. 377. The duties and responsibilities of a common carrier of live stock however may legally be modified by special contract. Summerlin v. Seaboard Air Line Ry., *supra*. And where the railroad company relies upon a special contract to relieve it of its common law liability it must plead and prove such contract. But in the absence of a contract limiting the liability of a common carrier of live stock its liability is that of an insurer against such loss or damage as does not

arise from the act of God, the public enemy and those arising from the natural propensities of the animals received for transportation, against which due care could not provide. In a case therefore where the shipper shows the delivery to the railroad of the live stock in good condition and a delivery at the point of destination by the railroad company in bad condition from bruises, cuts and wounds on account of which the shipper suffers a loss, and that neither the shipper nor his agent were in charge of the stock during the trip, the burden is upon the carrier to show that such loss or injury did not result from any negligence on its part, or that the cause of the loss or injury was within one of the excusatory exceptions recognized by law or provided for by the terms of the special contract. Atlantic Coast Line R. Co. v. Rice, *supra;* Terre Haute & L. R. Co. v. Sherwood, 132 Ind. 129, 31 N. E. Rep. 781; Hull v. Chicago, St. P., M. & O. Ry. Co., 41 Minn. 510, 43 N. W. Rep. 391; Hinkle v. Southern Ry. Co., 126 N. C. 932, 36 S. E. Rep. 348. See also Note Ann. Cas. 1913 E, p. 311; Moore v. Chicago, R. I. & P. R. Co., 151 Iowa 353, 131 N. W. Rep. 30; Illinois Cent. R. Co. v. Word, 149 Ky. 229, 147 S. W. Rep. 949; McCampbell, Figg & Burnett v. Louisville & N. R. Co., 150 Ky. 723, 150 S. W. Rep. 987; Louisville & N. R. Co. v. Smitha, 145 Ala. 686, 40 South. Rep. 117. See also Note 15 Am. & Eng. Ann. Cas. 35.

In this case it appears that the shipper did not accompany the stock during the transit, but they were in the sole custody of the carrier from the time of their delivery to it until the arrival at DeFuniak Springs; that all the stock were in good condition and sound when received by the carrier for transportation, that they were properly loaded and suitable bedding prepared for them and the car securely closed; that upon arrival at DeFuniak Springs the

particular mule was in bad condition. The plaintiff sought to show that the other stock were also bruised, scratched and wounded, but this evidence was excluded, and as we think, improperly. It appears that the mule as well as the other stock in the car were gentle, "well broken" horses and mules, not wild, vicious nor unruly, and the particular one was of "an average" in size, condition and strength. The evidence showed that the mule had received several bruises and wounds and tended to show internal injuries. The evidence tended to show that the injuries sustained by the mule resulted from his having been thrown to the floor by rough handling of the car and was trampled on by the other stock. Assuming that the evidence adduced at the trial tended to prove this, the burden was upon the defendant as a common carrier to show that its failure to deliver the mule at DeFuniak Springs was due to some inevitable accident or disease, weakness or other inherent defect in the mule, or the vicious character of the other stock, and not chargeable to any want of due care on its part, or that by reason of a contract between the shipper and carrier the latter was relieved of its liability. See authorities above cited.

A demurrer to evidence admits the truth of all the testimony and of all the reasonable deductions that can be made therefrom, and should set forth all the evidence intended to be admitted and the evidence is taken most strongly against the demurrant. Wilkinson v. Pensacola & A. R. Co., 35 Fla. 82, 17 South. Rep. 71; Fee v. Florida Sugar Mfg. Co., 36 Fla. 612, 18 South. Rep. 853; Holland v. State, 39 Fla. 178, 22 South. Rep. 298; Mugge v. Jackson, 50 Fla. 235, 39 South. Rep. 157; Skinner Mfg. Co. v. Wright, 51 Fla. 324, 41 South. Rep. 28; Myers v. Hodges, 53 Fla. 197, 44 South. Rep. 357; Comforter v. City of Apalachicola, 63 Fla. 113, 58 South. Rep. 28.

The demurrant in this case did not set forth on the record all the evidence intended to be admitted thereby, but expressly admitted all that the evidence of the plaintiff proved or tended to prove. All of that evidence is before us by the bill of exceptions and we do not consider it to be conflicting, uncertain or undeterminate; but upon the other hand think that it makes a clear prima facie case against the defendant under the declaration and subsequent pleadings. The judgment is, therefore, reversed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.