CHARLOTTE HARBOR AND NORTHERN RAILWAY COMPANY, *Plaintiff in Error*, v. HARRY ORCHARD, *Defendant in Error*.

### Opinion Filed May 4, 1917.

1. In an action for damages to fruit trees alleged to have been caused by a fire negligently set out by a passing railroad locomotive, where the evidence fails to prove or tend to prove that the fire was caused in the manner alleged, a verdict for the plaintiff should be set aside.

2. In an action against a railroad corporation to recover damages to an orange grove located near the railroad track of the defendant company alleged to have been caused by fire that negligently escaped from the defendant's engine, the plaintiff should establish by substantial evidence a connection between the fire which burned the orange grove and the fire that negligently escaped from the defendant's engine.

Writ of Error to Circuit Court for DeSoto County; Jas. W. Perkins, Judge.

Judgment reversed.

*McKay, Withers & Phipps* and *Treadwell & Treadwell,* for Plaintiff in Error;

*Leitner & Leitner,* for Defendant in Error.

PER CURIAM.—The defendant in error, hereinafter referred to as the plaintiff, brought suit against the Charlotte Harbor and Northern Railway Company, hereinafter referred to as the defendant, in the Circuit Court for DeSoto County for damages to an orange grove alleged to have been caused by a fire which the defendant negligently set out and caused to be started by carelessly allowing sparks to be emitted from the smokestack of one of its engines and coals of fire to be dropped from the engine's ash pan. The original declaration contained five counts; it was amended by adding two counts numbered six and seven, and amended again by adding two more counts numbered eight and nine. Demurrers to the first seven counts were overruled. The defendant pleaded not guilty; that the plaintiff was not the owner of the property at the time it was alleged to have been injured, and that the plaintiff contributed to the damage complained of by carelessly and negligently failing to keep his premises free from inflammable material, and by allowing his premises to become overgrown with grass and weeds of such character as to be highly inflammable. There was a trial upon the issues made by these pleas and a verdict for the plaintiff in the sum of four thousand dollars, upon which judgment was entered, and the defendant took a writ or error.

The assignments of error which are argued question the sufficiency of all the counts in the declaration except the last two; the admission in evidence of a portion of a bill of exceptions taken and made up at a former trial of the case; the giving of certain instructions requested by the plaintiff and the refusal of others requested by the defendant, and the order denying the defendant's motion for a new trial, which was based upon grounds including one questioning the sufficiency of the evidence to support the verdict.

We will not discuss the assignments of error which question the sufficiency of the declaration or the correctness of the court's refusal to give certain instructions requested by the defendant, or those which question the correctness of those given upon the plaintiff's request, because after having carefully read the evidence as it is presented to us in the bill of exceptions, we think it was the court's duty to have granted the motion for a new trial. The declaration is framed upon several theories: One is that the defendant allowed grass and debris to accumulate upon its right of way and that coals of fire dropping from the engine's ash pan and emitted from the smokestack ignited the grass and debris, causing a fire which burnt the plaintiff's grove; another was that the engine was equipped with an improper spark arrester which allowed sparks to be emitted therefrom which fell on the grass and debris on the right of way, causing the fire; another that the coals of fire and sparks fell upon the plaintiff's uncultivated land and caused the fire, and that the engine was so carelessly and negligently managed and operated that fire escaped from the locomotive and set fire to the plaintiff's orange grove.

The evidence shows that the plaintiff's orange grove was located on a tract of land adjacent to the defendant's

railroad right of way near Arcadia; that on the 17th day of November, 1909, an engine owned and operated by the defendant passed the plaintiff's orange grove about one o'clock p. m. on its way to Arcadia. It was an engine which some witnesses thought had caused fires along the road several times before. On the day the fire occurred the engine had been emitting sparks from the smoke-stack so that a man riding on one of the three or four flat cars drawn by the engine went forward to the cab of the engine to avoid the discomfiture caused by the cinders and sparks falling upon him. When the train passed the grove no one discovered any fire in it. After remaining in Arcadia for some length of time, about which the evidence is conflicting, the train returned. When it passed the grove upon its return trip the grove was discovered to be on fire. The evidence is conflicting as to the distance the "fire line" appeared to be from the right of way. There is some evidence upon which the jury could have found that the fire line was near enough to the right of way that assuming it to have originated there, it could have started from sparks or coals of fire thrown from the smokestack of a passing engine. There is no evidence whatever to show at what spot in the field the fire originated. The witness B. F. Nunnolly said that he was on the train when it went into Arcadia, and was on it when it returned not over thirty minutes later; that the fire was "almost in the edge of the grove;" "between 250 and 300 feet was where the fire was, right over in the corner of the bay head like." This witness said that the engine had before that time set out fires on the right of way. But fires on the right of way may have been set out from coals dropping from the ash pan. There was no evidence that the fire complained of in this case originated on the right of way and was communicated to the grass and weeds and thence to the grove on the plaintiff's land. The

witness also said that he, thought the engine had never thrown sparks 150 feet from the right of way unless there was a heavy wind. This witness was the man who was riding on the flat car and went into the engine cab to avoid the sparks. That was a mile beyond the grove, but when the engine came to the grove the engine "slowed down." The following question was asked: "Q. She was throwing sparks then?" To which he answered as follows: "No, I said she was working light!" Again: "Q. If she was running light she wasn't throwing big sparks?" "A. Not apt to." After persistent effort on counsel's part during the cross-examination this witness finally said, that he would not swear that when the engine passed the grove coming into Arcadia it was throwing sparks. But as to the place where the fire was burning when he saw it, his testimony developed on cross-examination was more damaging to the defendant than his direct testimony, because on cross-examination he located the fire much nearer to the right of way. He also testified under counsel's questioning that the "wind was pretty swift;" but he also said that the fire was burning in a circle and "back against the wind," which brought the fire line nearer the right of way. F. A. Hammerly was also on the train; he agreed with the witness Nunnolly that only thirty minutes elapsed between the passing of the engine coming into the city and to its passing the grove upon the return trip. The "Bay head" was in the southwest corner of the land and consisted of a growth of "tall bay trees, tall oak trees, alders and palmettos," and extended to the right of way of the railroad; and according to the testimony of the plaintiff was "low and swampy."

We are unable to discover in the evidence presented in this record any fact connecting the fire which occurred on the plaintiff's land with the throwing of sparks from the

engine or the dropping of coals of fire from the ash pan. At best it can only be said that there was a bare possibility of the correctness of one of the theories on which the declaration was framed; but there is nothing to show that the spark arrester was imperfect in construction or adjustment, and nothing to show that the engine was carelessly handled. On the other hand, the contrary appears so far as any negligence in handling or operating the engine is concerned. We think there was a failure on the part of the plaintiff to trace the fire to the defendant's engine. The origin of the fire is unaccounted for except by a mere guess, which is not sufficient under the law as it exists now to fasten liability on the defendant. See Florida East Coast Ry. Co. v. McElroy, 72 Fla., 72 So. Rep. 459; Schultz v. Pacific Insurance Co., 14 Fla. 73; Carney v. Stringfellow, decided at the present term; Florida Fire & Casualty Co. v. Hart, decided at the present term.

The court erred in denying the motion for a new trial, and for that reason the judgment is reversed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD, WHITFIELD and ELLIS, JJ., concur.